Kevin A. Lipeles (Bar No. 244275)
Thomas H. Schelly (Bar No. 217285)
Ralph A. Kottke (Bar No. 287363)
LIPELES LAW GROUP, APC
880 Apollo Street, Suite 336
El Segundo, California 90245
Telephone: (310) 322-2211
Fax: (310) 322-2252

Attorneys for Plaintiff,
Brent Lindsey

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRENT LINDSEY, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>TRAVELERS COMMERCIAL INSURANCE COMPANY, et al,<br><br>Defendants. | **CASE NO.: 2:19-cv-01855-KJM-CKD**<br><br>**PETITIONER'S PETITION TO VACATE ARBITRATION AWARD; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RALPH A. KOTTKE** |

Plaintiff Brent Lindsey moves to vacate the arbitrator's award under 9 U.S. Code Section 10 (a)(3) for refusing to hear evidence pertinent and material to the controversy. An African American, Mr. Lindsey was working as a claims adjuster for Defendant. By speaking with Caucasian adjusters and an administrator with access to pay records, Mr. Lindsey learned he was making significantly less than Caucasian adjusters with similar experience and production records. (Response to Form Interrogatory 201.3 page 5, lines 27 and 28; page 6 lines 1 and 2, attached and authenticated in Kottke Declaration as Exhibit A).

Mr. Lindsey brought an action against Defendant for racial discrimination. Among other claims, he charged Defendant with discrimination in compensation. (Complaint, paragraph 89, page 14., lines 18, 19, attached and authenticated in Kottke Declaration as Exhibit B). In

discovery he sought the pay data of the 35 Caucasian claims adjusters he worked with. (Notice of Deposition of Defendant Travelers Person Most Knowledgeable and Request for Production of Documents, Request for Production No. 1, page 9, lines 4-6, attached and authenticated in Kottke Declaration as Exhibit C). Defendant strongly opposed providing this data. The arbitrator supported Defendant's objection. The arbitrator stated that Mr. Lindsey sought irrelevant documents. (Discovery Order No. 1, paragraph 6, attached and authenticated in Kottke Declaration as Exhibit D) This denial severely prejudiced Mr. Lindsey's ability to present his case. In a motion for summary judgment the arbitrator ruled there were no issues of material fact. This occurred despite the arbitrator preventing Mr. Lindsey from obtaining Caucasian pay data to compare with Mr. Lindsey's pay as an African American.

## STATEMENT OF FACTS

Mr. Lindsey came to work for Defendant in 2011. He worked in Sacramento, California at Defendant's Northern California property claims handling division. He served in the same division his entire eight year career at Defendant's. During that time Defendant paid him substantially less than his Caucasian colleagues. He was routinely denied the raises he sought. These denials occurred despite routine stellar job performance reviews. (Performance Evaluation of 2015, attached and authenticated in Kottke Declaration as Exhibit F; Performance Evaluation of 2016, attached and authenticated in Kottke Declaration as Exhibit G; Performance Evaluation of 2017, attached and authenticated in Kottke Declaration as Exhibit H).

He learned he was not being paid the same as Caucasian claims adjusters. Every year when his performance review came up, he would ask for a merit raise. Routinely he was told he did not qualify. (Plaintiff's Response to Form Interrogatories, page 5, line 22 to page 6, line 6, attached and authenticated in Kottke Declaration as Exhibit A). Yet in communication with Caucasian adjusters he learned they *were* receiving such raises. (Plaintiff's Response to Form Interrogatories, page 5, line 26 to page 6, line 2, attached and authenticated in Kottke Declaration as Exhibit A). Finally, his suspicions were confirmed in 2015 when he spoke with loss coordinator Kristen Brimmer. She had access to all of the adjusters pay data in his area. She told him he was being paid $60,000 while Caucasian adjusters with no more experience or production

record were being paid $90,000 to $100,000 per year. (Plaintiff's Response to Form Interrogatories, page 6, lines 5-8, attached and authenticated in Kottke Declaration as Exhibit A).

Over eight years he received only five raises. (Workforce Summary Travelers 000396, attached and authenticated in Kottke Declaration as Exhibit I.). Four were automatic when he was promoted from one job to another within the property section. (Job data detailing reason for each of his raises Travelers 000390, 380, 376, attached and authenticated in Kottke Declaration as Exhibit J) Over *eight* years he received only *one* merit raise! (Job Data of 11/01/2017, attached and authenticated in Kottke Declaration as Exhibit K) In contrast a Caucasian worker, David Gosney, over *six* years received *three* merit raises. (Deposition of David Gosney page 34, lines 10-24, attached and authenticated in Kottke Declaration as Exhibit L).

In his last full year at Defendant's, 2018, Mr. Lindsey's annual salary was $83,000. (Workforce Job Summary, attached and authenticated in Kottke Declaration as Exhibit I) While this salary represented an improvement over seven years of working for Defendant, Mr. Lindsey had reason to believe his Caucasian colleagues were making considerably more.

His suspicion was validated when he asked Defendant to disclose the salary data of Mr. Lindsey's Caucasian colleagues. Mr. Lindsey must have hit a sensitive point. Defendant vehemently insisted it should not have to release this. The arbitrator ruled that Mr. Lindsey's request sought irrelevant documents despite their supreme relevance! (Discovery Order No. 1, paragraph 5, attached and authenticated in Kottke Declaration as Exhibit D)

This denial severely prejudiced Mr. Lindsey. It prevented him from proving that he was discriminated in pay due to race. Subsequently, in a motion for summary judgment, the arbitrator ruled there was no material issues of fact. (Ruling on Motion for Summary Judgment, last paragraph, attached and authenticated in Kottke Declaration as Exhibit E) But there certainly was. The arbitrator simply did not give Mr. Lindsey access to the data he needed.

Mr. Lindsey filed suit against Defendant on or about August 5, 2019 on several grounds including racial discrimination in compensation. (Complaint, paragraph 89, attached and authenticated in Kottke Declaration as Exhibit B) On motion of the Defendant the case was moved from the Superior Court of California to United States District Court, Eastern District of

California. Once there, Defendant successfully moved the case again to arbitration. The Honorable David Freedman of the American Arbitration Association was appointed as arbitrator.

On or about September 2020, a dispute arose in discovery when Mr. Lindsey asked Defendant to produce in a deposition the following:

"**Request for Production No. 1: ALL DOCUMENTS showing pay of other adjusters in CLAIMANT's department during relevant periods of their employment with DEFENDANT**." (Notice of Deposition of Defendant Travelers' Person Most Knowledgeable-draft, page 9, attached and authenticated in Kottke Declaration, Exhibit C).

Defendant objected to the request and the arbitrator sustained Defendant's objection: "I find the requests are overbroad, unduly burdensome, and seek documents on matters that are not relevant to the claims asserted." (Discovery Order No. 1, paragraph 6, attached and authenticated in Kottke Declaration, Exhibit D).

Mr. Lindsey then moved for reconsideration amending his request to limit it to the year of 2018 and to have the names redacted. Mr. Lindsey noted this would apply to only 35 persons. (Email of Ralph Kottke on November 13, 2020, page 2, last two paragraphs, attached and authenticated in Kottke Declaration as Exhibit M). This motion was considered in the discovery conference of November 16, 2020 and the arbitrator declined to change his earlier ruling. (Email of David Freedman of January 8, 2021, attached and authenticated in Kottke Declaration as Exhibit N).

Mr. Lindsey made another effort to obtain discovery of Caucasian adjuster salary data. He sent discovery requests to Defendant requesting salary data of the adjusters (Claimant's Special Interrogatories Set Two, attached and authenticated in Kottke Declaration as Exhibit O) and requesting W-2 documents of these employees (Claimant's Requests for Production Set Two, attached and authenticated in Kottke Declaration as Exhibit P).

On December 2, 2020 Defendant objected to the discovery requests (Defendant's Answer to Special Interrogatories Set Two and Defendant's Response to Requests for Production Set Two, attached and authenticated in Kottke Declaration as Exhibit Q).

Mr. Lindsey filed a Motion to Compel with the arbitrator on December 21, 2020 (Plaintiff's Motion to Compel, attached and authenticated in Kottke Declaration as Exhibit R). The arbitrator did not immediately rule on the motion. Instead he moved forward with the hearing on Defendant's Motion for Summary Judgment on December 23. He ruled in favor of Defendant on the MSJ. He then ruled the Plaintiff's motion moot (Case Management Order No. 5, attached and authenticated in Kottke Declaration as Exhibit T).

The denial of Mr. Lindsey's motions to obtain discovery of Caucasian pay was prejudicial. In the MSJ ruling the arbitrator stated as to Mr. Lindsey's claim, "[H]is evidence does not … show any facts to support his allegation that race was ever a factor in his compensation." (Ruling on Motion for Summary Judgment, page 12, lines 23-25, attached and authenticated in Kottke Declaration as Exhibit M).

This was a gross injustice. Mr. Lindsey had shown reports from Caucasian employees that they were getting raises when he was not (Plaintiff's Response to Form Interrogatories-General, page 5, line 26 to page 6, line 2, attached and authenticated in Kottke Declaration as Exhibit A. He showed that in 2015 he was being paid $30,000 less than other adjusters. (Plaintiff's Response to Form Interrogatories, page 6, lines 5-8, attached and authenticated in Kottke Declaration as Exhibit A). Mr. Lindsey showed that he had received but one merit raise when a Caucasian agent had received three. (Deposition of David Gosney, page 34, lines 7-22, attached and authenticated in Kottke Declaration as Exhibit L). He needed the actual salary data to corroborate his evidence, but the Arbitrator arbitrarily denied him access to the evidence and then ruled against him for the lack of it.

## ARGUMENT

**I.  AS THE ARBITRATION AGREEMENT CALLS FOR LIBERAL DISCOVERY, MR. LINDSEY IS ENTITLED TO SALARY DATA OF CAUSCASIAN COLLEAGUES TO PRESENT CASE FOR RACIAL DISCRIMINATION IN COMPENSATION.**

Upon entering into employment with Defendant, Mr. Lindsey was required to sign a mandatory arbitration agreement. In this agreement, Defendant stipulated that:

**"[T]he hearing shall be conducted by the arbitrator in whatever manner will most expeditiously permit and allow the parties *to develop their respective claims and defenses and full presentation of evidence and arguments of the parties*.**" (emphasis added). *(*Traveler's Arbitration Policy, page 3, section 4, attached and authenticated in Kottke Declaration as Exhibit U.) Defendant's agreement thus stipulates full discovery.

As Defendant is the one who drafted the agreement, it is be enforced strictly against Defendant. *"Ambiguities in contract language are to be resolved against the drafter." Victoria v Superior Court,* (1985) 40 Cal 3rd 734, 738. Here, Defendant drafted the form agreement without consultation with Mr. Lindsey, then insisted Mr. Lindsey sign it upon commencing work. It is therefore Mr. Lindsey's contractual right to full discovery with any doubts as to what that discovery entails resolved in favor of Mr. Lindsey. This did not occur. Defendant refused Mr. Lindsey's reasonable request for Caucasian employee pay records and the arbitrator supported him. Mr. Lindsey's contract rights require this order be reversed.

Defendant is also bound to provide Mr. Lindsey with full discovery rights by another provision in the employment contract. Defendant required that Mr. Lindsey to agree to the rules of the American Arbitration Association. (Travelers Policy Regarding Arbitration, page 2, paragraph 4, attached and authenticated in Kottke Declaration as Exhibit U). Under AAA rules **"the arbitrator shall have the authority to order such discovery … as the arbitrator considers necessary to a full and fair exploration of the issues in dispute…"** (American Arbitration Association Employment Rules and Mediation Procedures, Revised 2017, Section 9). Here again, Defendant breached that agreement with the arbitrator's support when Mr. Lindsey asked for:

" **ALL DOCUMENTS showing pay of other adjusters in CLAIMANT's department during relevant periods of their employment with DEFENDANT**." (Notice of Deposition of Defendant Travelers' Person Most Knowledgeable-draft, Request for Production No 1, attached and authenticated in Kottke Declaration as Exhibit C).

Defendant strenuously objected. The arbitrator supported Defendant saying : "I find the requests are overbroad, unduly burdensome, and seek documents on matters that are not relevant

to the claims asserted." (Discovery Order No. 1, paragraph 6, attached and authenticated in Kottke Declaration as Exhibit D).

Mr. Lindsey responded by limiting the request to the year of 2018, noted that there were only 35 persons asked for and agreed to redact the names. Thus, there was no undue burden to Defendant in replying to the request.

The request was also for clearly relevant data. Lindsey's complaint repeatedly alleges race discrimination by Defendant against him (Complaint, paragraphs 11-17, 53, 76, 78, 79, 89, attached and authenticated in Kottke Declaration as Exhibit B). A critical element of the discrimination was pay. The complaint states "Plaintiff was denied promotion and raises, on the basis of race and national origin discrimination…" (Complaint, paragraph 89, attached and authenticated in Kottke Declaration as Exhibit B). The information would have been easy to supply as it applied only to 35 persons, all in the local area, was for only one year and names and other identifying data could be redacted to protect privacy.

Still the arbitrator refused to issue an order for the discovery despite its relevance and ease of production. (Email of David Freedman of January 8, 2021, attached and authenticated in Kottke Declaration as Exhibit N).

This denial was highly prejudicial to Mr. Lindsey. He knew he was suffering discrimination in pay. In 2015 he had learned from an administrator he was making $30,000 less than his Caucasian colleagues. (Plaintiff's Response to Form Interrogatories, page 6, lines 5-8, attached and authenticated in Kottke Declaration as Exhibit A). With this salary data he could have corroborated the 2015 data and shown that discrimination was still occurring in 2018. As the saying goes "Money talks." With this requested evidence, he would make his case.

II. **WHERE ARBITRATION RULES REQUIRE FULL AND FAIR EXPLORATION OF ISSUES, ARBITRATOR ABUSED HIS DISCRETION IN DENYING AFRICAN AMERICAN EMPLOYEE ACCESS TO COMPARATIVE SALARY DATA TO ESTABLISH HIS CASE FOR RACIAL DISCRIMINATION.**

Defendant's arbitration agreement also binds the parties to the rules of the American Arbitration Association. (Arbitration Agreement page 2, paragraph 5. ) Under the rules of the American Arbitration Association:

**"The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration**. (American Arbitration Rules Employment (revised 2017) section 9).

The arbitrator failed to follow the rules. A critical issue in dispute was Mr. Lindsey's claim he was discriminated against on the basis of race in terms of compensation. (Complaint, paragraph 89, attached and authenticated in Kottke Declaration as Exhibit B ) To fully explore this issue, it is obvious that one would need to compare Mr. Lindsey's pay as an African American with the pay of his Caucasian colleagues. Yet when asked to order this, the arbitrator refused. (PMK Notice Draft, Exhibit B, Request for Production 1, , attached and authenticated in Kottke Declaration as Exhibit C); (Discovery Order No. 1 paragraph 6, attached and authenticated in Kottke Declaration as Exhibit D); (Email of Ralph Kottke on November 13, 2020, attached and authenticated in Kottke Declaration as Exhibit M): (Email of David Freedman of January 8, 2021, attached and authenticated in Kottke Declaration as Exhibit N).

As stated above, Mr. Lindsey sought documents showing the pay of Caucasian claims adjusters in his department. This involved the pay of 35 persons. There was no question as to whom was Caucasian and whom was African American. Of the 35 persons in Mr. Lindsey's section only two were African American (Deposition of David Gosney, page 33, lines 8-25 and page 34, page 1, attached and authenticated in Kottke Declaration as Exhibit L) No issues of privacy were present as Mr. Lindsey agreed to redact identifying data. Nevertheless, the Arbitrator improperly denied Mr. Lindsey's request in violation of the discovery rules of the American Arbitration Association.

This arbitrary and capricious order prejudiced Mr. Lindsey. Without comparative salary data of Caucasian employees, he was handicapped in presenting his case. With that data in hand, his case would have been compelling.

III. **WHERE DEFENDANT EMPLOYER HAS EXCLUSIVE ACCESS TO EVIDENCE OF RACIAL DISCRIMINATION AGAINST AN AFRICAN AMERICAN, HE HAS A DUTY TO PROVIDE THAT INFORMATION IN DISCOVERY.**

The Defendant had exclusive control over the pay data of Mr. Lindsey's colleagues, 35 Caucasian claims adjusters. As an African American, Mr. Lindsey needed that evidence to support his claim of racial discrimination.

Under the Federal Rules of Civil Procedure Rule 26 (b)(1): **"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, *the parties' relative access to relevant information*, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."** (emphasis added)

Defendant had the evidence necessary for Mr. Lindsey to present his case. Mr. Lindsey could not possibly acquire it on his own. It would have been an easy matter for Defendant to provide the salary data of 35 persons. Defendant had shown that it had the means to provide this data as it had already done so as to Mr. Lindsey. Nevertheless, Defendant objected to disclosure. The arbitrator sustained Defendant's objections. In this way, the arbitrator enabled the Defendant to conceal its racial discrimination against Mr. Lindsey and defeat the proper administration of justice.

## CONCLUSION

The Arbitrator poorly served Mr. Lindsey. As an African American he was maintaining an action for racial discrimination. It was vital that he obtain salary data of his fellow Caucasian claims adjusters to prove his case.

Defendant had the data at its fingertips yet insisted on concealing it from Mr. Lindsey. Despite the dictates of the Arbitration agreement, the rules of the American Arbitration Association and the Federal Rules of Civil Procedure, the arbitrator capriciously permitted this

concealment. Therefore, under 9 U.S. Code section 10, the court may vacate an arbitrator's award where the arbitrator has "refused to hear evidence pertinent and material to the controversy…" This arbitrator has clearly done so.

Judge Tuttle in *Culpepper v. Reynolds Metal Co*, 421 F. 2d 888, 891 (5th Cir 1970) stated:

**"Racial discrimination in employment is one of the most deplorable forms of discrimination known to society, for it deals not just with an individual's sharing in the 'outer benefits' of being an American citizen but rather the ability to provide decently for one's family in a job or profession for which he qualifies and chooses."**

Mr. Lindsey has a right to discovery critical to his case for racial discrimination. He requests that the arbitration award be vacated. He further requests that arbitrator order that Mr. Lindsey be given access to salary data of his Caucasian colleagues.

    Respectfully submitted,

    LIPELES LAW GROUP, APC

April 18, 2021

    */s/ Ralph A. Kottke*

    Kevin A. Lipeles
    Thomas H. Schelly
    Ralph A. Kottke, attorneys
    for Brent Lindsey