1   Thomas H. Schelly (Bar No. 217285)
    Kevin A. Lipeles (Bar No. 244275)
2   Ralph A. Kottke (Bar No. 287363)
    LIPELES LAW GROUP, APC
3   880 Apollo Street, Suite 336
    El Segundo, California 90245
4   Telephone: (310) 322-2211
    Facsimile: (310) 322-2252
5

6   Attorney for Claimant,
    Brent Lindsey
7

8                   **UNITED STATES DISTRICT COURT**
                **FOR THE EASTERN DISTRICT OF CALIFORNIA**
9

10  BRENT LINDSEY, an individual,

11                          Claimant,          **CASE NO.: 2:19-cv-01855-KJM-CKD**

12      v.

13                                             **DECLARATION OF RALPH A.**
    TRAVELERS COMMERICIAL               **KOTTKE IN SUPPORT OF**
14  INSURANCE COMPANY, Inc. a           **PLAINTIFF'S PETITION TO VACATE**
    Connecticut corporation, et al.     **ARBITRATION AWARD**
15

16                          Respondents.

17                                             Action Filed: July 17, 2019

18                                             .

19

20

21

22

23

24      I, Ralph A. Kottke, declare:

25  1.      I am an attorney licensed to practice law in the State of California.  I am an attorney

26  with Lipeles Law Group, APC, which is attorney of record for Plaintiff Brent Lindsey. The

27  statements contained in this declaration are true and they are of my own personal knowledge.  If

28  called upon, I could competently testify thereto.

                                                                                                      1
    _____
                   **DECLARATION OF RALPH A. KOTTKE IN SUPPORT OF**
              **PLAINTIFF'S PETITION TO VACATE ARBITRATION AWARD**

1    2.      Attached hereto as Exhibit A are true and correct copies of relevant portions of the

2    Plaintiff's Responses to Form Interrogatories – General Set One.

3    3.      Attached hereto as Exhibit B are true and correct copies of relevant portions of the

4    Plaintiff's Complaint.

5    4.      Attached hereto as Exhibit C are true and correct copies of relevant portions of the

6    Notice of Deposition of Respondent Travelers Person Most Knowledgeable (draft)

7    5.      Attached hereto as Exhibit D are true and correct copies of Discovery Order No. 1.

8    6.      Attached hereto as Exhibit E is a true and correct copy relevant portions of Ruling on

9    Motion for Summary Judgment.

10    7.      Attached hereto as Exhibit F is a true and correct copy of relevant portions of

11    Performance Evaluation of 2015.

12    8.      Attached hereto as Exhibit G is a true and correct copy of relevant portions of

13    Performance Evaluation of 2016.

14    9.      Attached hereto as Exhibit H is a true and correct copy of relevant portions of

15    Performance Evaluation of 2017.

16    10.      Attached hereto is Exhibit I which is a true and correct copy of Brent Lindsey's

17    Workforce Job Summary.

18    11.      Attached hereto is Exhibit J which is a true and correct copy of Brent Lindsey's pay rate

19    changes due to promotion of 11/16/2012,10/23/2015, and 10/01/2015.

20    12.      Attached hereto is Exhibit K which are true and correct copies of  Brent Lindsey's Merit

21    Raise of 11/01/2017.

22    13.      Attached hereto is Exhibit L which is a true and correct copy of relevant portions of the

23    deposition of David Gosney.

24    14.      Attached hereto is Exhibit M which is a true and correct copy of the email of Ralph A.

25    Kottke to Arbitrator David Freedman of November 13, 2020.

26    15.      Attached hereto as Exhibit N is a true and correct copy of the email of Arbitrator David

27    Freedman of 1/8/2021 to Ralph Kottke.

28

2

1   16.     Attached hereto as Exhibit O is a true and correct copy of Brent Lindsey's Special

2   Interrogatories to Respondent (Set Two)

3   17.     Attached hereto as Exhibit P is a true and correct copy of Brent Lindsey's Request for

4   Production of Documents (Set Two).

5   18.     Attached hereto as Exhibit Q is a true and correct copy of Respondent's Responses to

6   Mr. Lindsey's Requests for Production (Set Two.) and Answers to Special Interrogatories (Set

7   Two).

8   19.     Attached hereto as Exhibit R is a true and correct copy of Mr. Lindsey's Motion to

9   Compel Responses.

10  20.     Attached hereto as Exhibit S is a true and correct copy of Case Management Order

11  No. 5.

12  21.     Attached hereto as Exhibit T is a true and correct copy of relevant portions of Ruling on

13  Motion for Summary Judgment.

14  22.     Attached hereto as Exhibit U is a true and correct copy of relevant portions of

15  Defendant's Arbitration Agreement.

16  23.     Attached as Exhibit V is a true and correct copy of  relevant portions of the American

17  Arbitration Association Rules Revised 2017.

18  24.     Attached as Exhibit W is a true and correct copy of the Arbitrator's Award.

19          I make this declaration under penalty of perjury under the laws of the State of California

20  that the foregoing is true and correct. Executed on April 18, 2021, in El Segundo, California.

21

22                              *Ralph A. Kottke*

23                              _____

24                                   Ralph A. Kottke

25

26

27

28

**DECLARATION OF RALPH A. KOTTKE IN SUPPORT OF**
**PLAINTIFF'S PETITION TO VACATE ARBITRATION AWARD**

**EXHIBIT A**

Kevin A. Lipeles (Bar No. 244 275)
Thomas H. Schelly (Bar No. 217 285)
LIPELES LAW GROUP, APC
880 Apollo Street, Suite 336
El Segundo, California 90245
Telephone: (310) 322-2211
Fax: (310) 322-2252

Attorneys for Claimant,
BRENT LINDSEY

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| BRENT LINDSEY, an individual,<br><br>Claimant,<br><br>vs.<br><br>TRAVELERS COMMERCIAL INSURANCE COMPANY, a Connecticut corporation; TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, a Connecticut corporation, PEGGY STEPHENS, an individual; and DOES 1 through 100, inclusive,<br><br>Respondents. | **AAA CASE NO. 01-19-0004-6106**<br><br>**CLAIMANT'S RESPONSES TO FORM INTERROGATORRIES FROM RESPONDENT (SET ONE)** |

PROPOUNDING PARTY:     TRAVELERS INDEMNITY COMPANY

RESPONDING PARTY:     BRENT LINDSEY

SET NO.:     ONE

## FORM INTERROGATORY 200.1

Do you contend that the EMPLOYMENT relationship was at "at will"? If so:

(a) state all facts upon which you base this contention;

(b) state the name, ADDRESS, and telephone number of each PERSON who has knowledge of those facts; and

(c) identify all DOCUMENTS that support your contention.

(b) state when and how EMPLOYER first learned of each specific fact;

(c) state the name, ADDRESS, and telephone number of each PERSON who has knowledge of the specific facts; and

(d) identify all DOCUMENTS that evidence these specific facts.

**RESPONSE TO FORM INTERROGATORY 201.2:**

No.

(a)    N/A

(b)    N/A

(c)    N/A

(d)    N/A

**FORM INTERROGATORY 201.3**

Were there any other ADVERSE EMPLOYMENT ACTIONS, including (the asking party should list the ADVERSE EMPLOYMENT ACTIONS): If so, for each action, provide the following:

(a) all reasons for each ADVERSE EMPLOYMENT ACTION;

(b) the name, ADDRESS, and telephone number of each PERSON who participated in making each ADVERSE EMPLOYMENT ACTION decision;

(c) the name, ADDRESS, and telephone number of each PERSON who provided any information relied upon in making each ADVERSE EMPLOYMENT ACTION decision; and

(d) the identity of all DOCUMENTS relied upon in making each ADVERSE EMPLOYMENT ACTION decision.

**RESPONSE TO FORM INTERROGATORY 201.3:**

I was denied pay raises normally accorded to Caucasian employees.

(a)    Race.

(b)    Dennis Sullivan, Nathan Sentin, Scott Suckey, Lisa Androlina-Arnott. Contact data unknown; however, Respondent has such data. I made many attempts to get raises. Each year we would have a performance review. At that time, I would ask for a pay raise and nearly every time I was turned down due to my race. On or about April 2013 I had a review with Scott Suckey. He turned me down for a raise. He said I did not have enough "exceed expectations" and so was not "top adjuster." So, no raise. There were 20 adjusters in the department. I later found out that other Caucasian adjusters were receiving raises without having plentiful "exceeds" or being "top adjuster." I learned from Jason Rasman, Jennifer Rapper and Brittany (last

5

1  name forgotten). To name a few, all Caucasian, that they received raises without spectacular
2  performance records or being top adjuster. The next year, on or about April 2014, Lisa Arnott
3  gave me my review. Again, when I asked for a raise, I was told I did not have enough "ex-
4  ceeds" and was not top adjuster, so no raise. On or about April 2015, my review was with Keith
5  Pearman. Similarly, he told me I did not have enough "exceeds" and was not the top adjuster.
   He said no raise. In 2015, upset about the denials, I spoke with Kristen Brimmer. As Loss Co-
6  ordinator, she had access to pay records of all adjusters. She told me that I needed to complain.
7  She explained that I was making about $60,000 per year while Caucasian adjusters with no
8  greater experience or performance records were making $90,000 to $100,000. In April 2016, I
9  finally got some relief. My performance review was with Joe Salerno. He said I was being
10 grossly underpaid. He applied for me to receive a cost of living increase to bring my pay into
11 an acceptable range. On or about April 2017, however, it was back to the old story. My perfor-
12 mance review was with Dennis Sullivan. When I asked for a raise, he said no. He said I had no
13 "exceeds" and was not top adjuster. So, I received no raise. In April 2018, I had a performance
   review with Keith Pearman. This time my performance was in such a high range, he could not
14 deny me a raise. In eight years at Respondent's that was my only merit raise. In short, for me,
15 obtaining a raise was a continual struggle. Meanwhile, Caucasian adjusters were receiving rou-
16 tine raises without great "exceeds expectations" or "top adjuster" requirements.

17     (c)     Dennis Sullivan, Nathan Sentin, Scott Suckey, Lisa Androlina-Arnott. Contact
18 data unknown however Respondent has such data.

19     (d)     My pay records showing only one merit raise over nearly eight years.
       I was denied promotions to higher paying positions.
20
       (a)     Race.
21
       (b)     Peggy Stevens, Keith Pearman. Contact data available from Respondent.
22
       I applied for a promotion in the property section for Technical Specialist, a position for
23 which I was well qualified. I was passed over for a lesser qualified person, John Thanyi, who
24 was Caucasian. I also applied to be a manager in my department but was rejected.

25     I also applied many times for jobs outside my department including the Risk Manage-
26 ment Program and the Underwriting Training Development Program. Each time I was passed
27 over due to race as I was well qualified, and these were entry level positions.

28     (c)     Peggy Stevens, Keith Pearman. Contact data available from Respondent.
       (d)     Job applications within Respondent's system.

**VERIFICATION**

I, BRENT LINDSEY, have read the foregoing RESPONSES TO FORM INTERROGATORRIES - EMPLOYMENT (SET ONE), propounded by respondent TRAVELERS INDEMNITY COMPANY, and know the contents thereof.  The same is true of my own knowledge, except as to those matters stated on my information and belief, and, as to those matters, I am informed and believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on ___Aug 12, 2020___ at El Segundo, California.

Signature: _____

Email:  brentlindsey5@gmail.com

BRENT LINDSEY, Claimant

VERIFICATION

**EXHIBIT B**

1   Kevin A. Lipeles (Bar No. 244 275)
    Thomas H. Schelly (Bar No. 217 285)
2   LIPELES LAW GROUP, APC
    880 Apollo Street, Suite 336
3   El Segundo, California 90245
    Telephone: (310) 322-2211
4   Fax: (310) 322-2252

5   Attorneys for Plaintiff,
    BRENT LINDSEY
6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                       COUNTY OF SACRAMENTO

9   BRENT LINDSEY, an individual,          CASE NO.:

10              Plaintiff,                  COMPLAINT FOR:
11
12  vs.                                     1. DISCRIMINATION BASED ON
                                            PHYSICAL DISABILITY IN
13  TRAVELERS COMMERCIAL                    VIOLATION OF GOVT. CODE
    INSURANCE COMPANY, a Connecticut        §12940(a);
14  corporation; TRAVELERS CASUALTY         2. DISCRIMINATION BASED ON
    INSURANCE COMPANY OF AMERICA,           RACE AND NATIONAL ORIGIN IN
15  a Connecticut corporation, PEGGY        VIOLATION OF GOVT. CODE
    STEPHENS, an individual; and DOES 1     §12940(a);
16  through 100, inclusive,                 3. RACE AND NATIONAL ORIGIN
                                            HARASSMENT IN VIOLATION OF
17                                          GOVT. CODE §12940(j);
              Defendants.                   4. HOSTILE WORK ENVIORNMENT
18                                          IN VIOLATION OF GOVT. CODE
19                                          §12940 ET. SEQ.;
                                            5. FAILURE TO ACCOMOMDATE
20                                          PHYSICAL DISABILITY IN
21                                          VIOLATION OF GOVT. CODE
                                            §12940(m);
22                                          6. FAILURE TO ENGAGE IN A GOOD
23                                          FAITH INTERACTIVE PROCESS IN
                                            VIOLATION OF GOVT. CODE
24                                          §12940(n);
25                                          7. RETALIATION IN VIOLATION OF
                                            GOVT. CODE §12940 ET SEQ.;
26                                          8. FAILURE TO PREVENT
                                            DISCRIMINATION FROM
27                                          OCCURRING IN VIOLATION OF
28

                                                                        1
                    COMPLAINT AND DEMAND FOR JURY TRIAL

GOVT. CODE §12940(K);
9. FAILURE TO PROMOTE IN VIOLATION OF GOVT. CODE §12940 *ET SEQ.*;
10. WRONGFUL/CONSTRUCTIVE TERMINATION IN VIOLATION OF PUBLIC POLICY, GOVT. CODE §12940 *ET SEQ.*; and
11. RETALIATION IN VIOLATION OF THE FMLA/CFRA (29 U.S.C. §§2615(a)(2)/GOVT. CODE 12945.2 (1).

Brent Lindsey ("Plaintiff") alleges the following:

I.      **JURISDICTION AND VENUE**

1.      This action is brought pursuant to California Government Code §12920 *et seq.*, and the rules, regulations and directives implementing those statutes.

2.      Venue is proper in this Court pursuant to *Code of Civil Procedure* §§ 395 and 395.5 because the events causing the injuries and/or damages occurred in Sacramento County.

II.     **PARTIES**

3.      At all times relevant hereto, Plaintiff Brent Lindsey (hereinafter "Plaintiff") was an individual over age 18 and a resident of Sacramento County, California.

4.      Plaintiff is informed and believes and thereon alleges that at all times material hereto, Defendant Travelers Commercial Insurance Company, (hereinafter "TCIC"), has been, and is, a Connecticut corporation, with a principal place of business at One Tower Square, Hartford, Connecticut 06183.  At all times material hereto, TCIC has been, and is, a company that provides insurance. Plaintiff is informed and believes and thereon alleges that at all times material hereto TCIC has been authorized to do business and has been doing business in the State of California.

5.      Plaintiff is informed and believes and thereon alleges that at all times material hereto, Defendant Travelers Casualty Insurance Company of America, (hereinafter "TCICA"), has been, and is, a Connecticut corporation, with a principal place of business at One Tower Square, Hartford, Connecticut 06183.  At all times material hereto, TCICA has been, and is, a

2

1  are/were qualified to transact and conduct business in the State of California, and did transact

2  and conduct business in the State of California, and are thus subject to the jurisdiction of the

3  State of California.  Specifically, DOES 1 through 100 maintain offices, operate businesses,

4  employ persons, and conduct business in the County of Sacramento.

5       10.    Plaintiff is further informed and believes, and thereon alleges, that each of the

6  fictitiously named Defendants aided and assisted the named Defendants in committing the

7  wrongful acts alleged herein, and that Plaintiff's damages were proximately caused by each

8  Defendant.

9  **III.    FACTUAL ALLEGATIONS THAT ARE COMMON TO ALL CAUSES OF**

10       **ACTION**

11       11.    Plaintiff was an employee of TCIC and TCICA since September 2011. Plaintiff

12  worked as a Claims Adjuster. Plaintiff was denied a work environment free of disability, race

13  and national origin discrimination and was targeted for wrongful termination.

14       12.    In or about 2014, Ms. Stephens became Plaintiff's Field Property Lead Manager

15  ("FPLM").

16       13.    Immediately after Ms. Stephens became Plaintiff's FPLM she started to show

17  signs of apprehension toward Plaintiff due to his racial ethnicity.

18       14.    Plaintiff was subject to a hostile work environment created by Ms. Stephens and

19  was consistently harassed and discriminated against.

20       15.    Plaintiff was singled out at meetings, reprimanded, frivolous accusations were

21  made against him, he was publicly humiliated in front of colleagues, and in over 8 years

22  working for TICC and TICCA, Plaintiff was never given a raise or promotion.

23       16.    The blatant harassment and racial discrimination against Plaintiff caused

24  extreme stress and emotional distress to the point that Plaintiff became physically ill.

25       17.    Plaintiff brought the harassment and racial discrimination to the attention of his

26  managers and Human Resources representative, Cheryl Allen, to no avail.

27

28

4

COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

agents/employees harassed Plaintiff and/or failed to take immediate and appropriate corrective action. The harassment was sufficiently pervasive and severe as to alter the conditions of employment and to create a hostile or abusive work environment.

49.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered emotional distress and physical symptoms, pain and suffering, has lost income and related benefits, past and future, and medical expenses, all to his damage in a sum according to proof.

50.     Pursuant to California Government Code §12965(b), Plaintiff requests an award of attorneys' fees in this action.

51.     The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Plaintiff, thereby justifying an award to him of punitive damages.

## FOURTH CAUSE OF ACTION

**(Hostile Work Environment in Violation Govt. Code §12940 *et seq.*– By Plaintiff Against Defendants and Does 1 through 100)**

52.     Plaintiff realleges and incorporates by reference all of the allegations set forth in this Complaint.

53.     The offensive conduct to which Plaintiff was subjected constitutes a hostile work environment in violation to FEHA, California Government Code §12940 et seq. During his employment, Defendants violated FEHA, California Government Code §12940 (j), by discrimination against Plaintiff due to his race, national origin and physical disability.

54.     Defendants' harassment was hostile, abusive, continuous and pervasive to create a hostile work environment for the Plaintiff.

55.     Defendants' harassment was unwelcome, humiliating, offensive and adversely affected the terms of Plaintiff's employment.

9

75. This cause of action is brought pursuant to the FEHA, Govt. Code §12940(h), which provides that it is unlawful to retaliate against a person "because the person has opposed any practices forbidden under [Government Code sections 12900 through 12966] or because the person has filed a complaint, testified, or assisted in any proceeding under the FEHA."

76. As a result of his disabilities, national origin and race, Plaintiff was denied the right to work in an environment free of discrimination, was denied accommodation for his work injuries and was wrongfully terminated by Defendants.

77. Defendants' retaliatory conduct toward Plaintiff caused him emotional injury, including, but not limited to, humiliation, anxiety, fear, and loss of self-esteem. Defendants' retaliatory conduct was a substantial factor and the proximate cause of Plaintiff's damages.

78. Plaintiff's disability, national origin and race were the reasons Defendants retaliated against him.

79. Plaintiff has suffered monetary damages, lost wages and privileges of employment illegally caused by Defendants' discriminatory conduct in an amount according to proof.

80. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages for the reasons set forth in paragraph 33 above.

81. Pursuant to California Government Code §12965(b), Plaintiff requests an award of attorneys' fees in this action.

## EIGHTH CAUSE OF ACTION

**(Failure to Prevent Retaliation from Occurring in Violation of *Government Code* §12940(k) – By Plaintiff Against Defendants and Does 1 through 100)**

82. Plaintiff realleges and incorporates by reference all of the allegations set forth above in the Complaint.

83. Defendants' conduct in subjecting Plaintiff to discriminatory conduct due to Plaintiff's disability constituted breach of their duty under FEHA, including the duty to take immediate and appropriate corrective action and to take all reasonable steps to prevent

13

1  discrimination and retaliation from occurring pursuant to California Government Code Section

2  12940(k).

3      84.   Defendants failed to take measures to prevent discrimination and retaliation.

4      85.   As a direct result of the Defendants' failure to take all reasonable steps

5  necessary to prevent discrimination, Plaintiff has suffered and will continue to suffer pain and

6  suffering, extreme and severe mental anguish and emotional distress, loss of earnings and

7  earning capacity. Plaintiff is hereby entitled to general and compensatory damages in amounts

8  to be proven at trial.

9      86.   As a result of Defendants' conduct, Plaintiff is entitled to recover punitive

10  damages for the reasons set forth in paragraph 33 above.

11      87.   Pursuant to California Government Code §12965(b), Plaintiff requests an award

12  of attorneys' fees in this action.

13  <div align="center">**NINTH CAUSE OF ACTION**</div>

14  <div align="center">**(Failure to Promote In Violation of Govt. Code §§12940 et seq.– By Plaintiff Against**</div>

15  <div align="center">**Defendants and Does 1 through 100)**</div>

16      88.   Plaintiff realleges and incorporates by reference all of the allegations set forth

17  above in the Complaint.

18      89.   Plaintiff was denied promotion and raises, on the basis of race and national

19  origin discrimination and on the basis that Plaintiff complained to TCIC and TCICA about the

20  harassment and discrimination he was experiencing.

21      90.   TCIC's and TCICA's conduct toward Plaintiff violates Govt. Code §12940 et

22  seq. and the public policy of the State of California, including, but not limited to, public policy

23  which prohibits discrimination on the basis of race and national origin and which prohibits

24  retaliation against employees who oppose wrongful discriminatory employment practices.

25      91.   As a proximate cause of TCIC's and TCICA's conduct, Plaintiff has suffered,

26  and continues to suffer, economic damages including, but not limited to, loss of wages and

27  employment benefits, in an amount according to proof.

28

14

2. For compensatory damages for physical injury and emotional distress, in an amount according to proof;

3. For an award of consequential damages, in an amount to be proven at trial;

4. For punitive and exemplary damages, in a sum to be determined at trial;

5. For attorneys' fees under Government Code § 12965(b), according to proof;

6. For prejudgment interest, according to proof;

7. For reasonable costs of suit, in an amount according to proof;

8. For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Brent Lindsey hereby respectfully requests a trial by jury for all claims and issues raised in his Complaint that may be entitled to a jury trial.

LIPELES LAW GROUP, APC

Date: August 5, 2019

By: _____
Thomas Schelly
Kevin Lipeles
Attorneys for Plaintiff
Brent Lindsey

19

COMPLAINT AND DEMAND FOR JURY TRIAL

**EXHIBIT C**

1
2   Thomas H. Schelly (Bar No. 217285)
    Kevin A. Lipeles (Bar No. 244275)
3   Ralph A. Kottke (Bar No. 287363)
    LIPELES LAW GROUP, APC
    880 Apollo Street, Suite 336
4   El Segundo, California 90245
    Telephone: (310) 322-2211
5   Facsimile: (310) 322-2252

6   Attorney for Claimant,
    Brent Lindsey
7

8                    **AMERICAN ARBITRATION ASSOCIATION**

9

10  BRENT LINDSEY, an individual,          | **AAA CASE NO.: 01-19-0004-6106**

11          Claimant,

12  v.                                     | **NOTICE OF DEPOSITION OF
                                             RESPONDENT TRAVELERS
13                                           COMMERICIAL INSURANCE
                                             COMPANY'S AND TRAVELERS
14  TRAVELERS COMMERICIAL                    CASUALTY INSURANCE COMPANY
    INSURANCE COMPANYSPECTRUM                OF AMERICA'S PERSON MOST
15  MOTORS, Inc. a Connecticut corporation,  KNOWLEDGEABLE AND REQUEST
    et al.                                   FOR DOCUMENTS**
16
                                           | **Date:**
17          Respondents.                     **Time:**   .
                                             **Place:** Remote Web-Based Deposition
18                                                     Via Atkinson-Baker
19
20                                           Action Filed: July 17, 2019
                                             Trial Date:
21

22  TO ALL PARTIES AND TO THEIR ATTORNEYS:

23          NOTICE IS HEREBY GIVEN that pursuant to *California Code of Civil Procedure*

24  §2025.010 et seq., and American Arbitration Association Rules, Claimant will take the depo-

25  sition of Respondent Travelers Commercial Insurance Company, Inc. and Travelers Casualty

26  Insurance Company Inc.'s Person Most Qualified to testify as to those areas specified in Ex-

27  hibit "A."

28

**EXHIBIT B**

**DOCUMENTS TO BE PRODUCED AT DEPOSITION**

**REQUEST FOR PRODUCTION NO. 1:**

ALL DOCUMENTS showing pay of other adjusters in CLAIMANT'S department at during relevant periods of their employment with RESPONDENT.

**REQUEST FOR PRODUCTION NO. 2:**

Any file, other than a personnel file, maintained by YOU regarding CLAIMANT.

**REQUEST FOR PRODUCTION NO. 3:**

CLAIMANT's payroll file. (This demand includes but is not limited to, all DOCUMENTS regarding CLAIMANT's compensation and benefits during CLAIMANT's employment with YOU.)

**REQUEST FOR PRODUCTION NO. 4:**

All DOCUMENTS that reflect, refer, or pertain to any and all complaints by any of YOUR managers, employees or customers regarding YOUR conduct during the five years preceding the filing of this action limited to only those complaints from managers or employees at, or customers of, YOUR BUSINESS.

**REQUEST FOR PRODUCTION NO. 5**

All DOCUMENTS that reflect, refer, or pertain to any and all complaints by any of YOUR managers, employees or customers regarding purported retaliatory conduct by YOU during the five years preceding the filing of this action limited to only those complaints from managers or employees at, or customers of, YOUR BUSINESS.

**REQUEST FOR PRODUCTION NO. 6:**

All DOCUMENTS that reflect, refer, or pertain to any and all complaints by any of YOUR managers, employees or customers regarding purported discriminatory conduct by YOU during the five years preceding the filing of this action limited to only those complaints from managers or employees at, or customers of, YOUR BUSINESS.

1

**REQUEST FOR PRODUCTION NO. 7:**

2

3
     All DOCUMENTS that reflect, refer, or pertain to any and all complaints by any of

YOUR managers, employees or customers regarding conduct by YOUR employees during the

4
five years preceding the filing of this action limited to only those complaints from managers

5
or employees at, or customers of, YOUR BUSINESS.

6

**REQUEST FOR PRODUCTION NO.8:**

7
     All DOCUMENTS that reflect, refer, or pertain to any and all complaints by any of

8
YOUR managers, employees or customers regarding purported retaliatory conduct by YOUR

9
employees during the five years preceding the filing of this action limited to only those com-

10
plaints from managers or employees at, or customers of, YOUR BUSINESS.

11

**REQUEST FOR PRODUCTION NO. 9:**

12
     All DOCUMENTS that reflect, refer, or pertain to any and all complaints by any of

13
YOUR managers, employees or customers regarding purported discriminatory conduct by

14
YOUR employees during the five years preceding the filing of this action limited to only

15
those complaints from managers or employees at, or customers of, YOUR BUSINESS.

16

17

18

19
                         LIPELES LAW GROUP, APC

20
Date: September 25, 2020

21

By: _____

22
                  Ralph A. Kottke, Esq

23
                  Attorneys for Claimant

24

25

26

27

28

**EXHIBIT D**

## AMERICAN ARBITRATION ASSOCIATION

BRENT LINDSEY,

          Claimant,

v.

TRAVELERS COMMERCIAL INSURANCE
COMPANY, TRAVELERS CASUALTY
INSURANCE COMPANY OF AMERICA,
PEGGY STEPHENS,

          Respondents.

CASE NO. 01-19-0004-6106

**DISCOVERY ORDER NO. 1**

I conferred today with claimant's counsel Ralph Kottke and respondent's counsel Joel O'Malley concerning certain discovery disputes. Based on the matters discussed, the disputes are resolved as follows.

### Claimant's Deposition

Claimant is directed to answer all questions posed to him during his deposition unless a valid privilege exists. If a party wants me to rule on objections or privileges during the deposition, counsel should send me a text message at (310) 990-2582 that includes the telephone number where I can reach counsel.

### Claimant's Notice of Deposition of Person Most Knowledgeable

Claimant asked me to rule on several objections made by respondent.

Respondent's objections to topics 22, 25, 27, 28, 29, 30, 39, 40, 43, and 44 are sustained. I find the topics are overbroad, unduly burdensome, and seek testimony on matters that are not relevant to the claims asserted.

Respondent's objections to topics 45, 46, and 47 are overruled. I find the topics are not overbroad or unduly burdensome and do seek testimony on matters that could be relevant to the claims asserted.

Respondent's objections to document requests 1 and 9 are sustained. I find the requests are overbroad, unduly burdensome, and seek documents on matters that are not relevant to the claims asserted.

Claimant's counsel indicated he wants to amend claimant's arbitration demand. I directed counsel to make the request in a written application that states the specific amendment and the facts establishing good cause.

Date: October 27, 2020           /s/ David G. Freedman
                              Arbitrator

**EXHIBIT E**

**AMERICAN ARBITRATION ASSOCIATION**
EMPLOYMENT ARBITRATION TRIBUNAL

| | |
|---|---|
| BRENT LINDSEY, | CASE NO. 01-19-0004-6106 |
| Claimant, | **RULING ON MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| TRAVELERS COMMERCIAL INSURANCE COMPANY, TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, PEGGY STEPHENS, | |
| Respondents. | |

Respondents The Travelers Indemnity Company (Travelers) and Peggy Stephens have moved for summary judgment. Claimant Brent Lindsey has opposed the motion. I have considered the parties' written submissions and the oral argument presented on December 23, 2020, and grant the motion for the reasons set forth below.

## I.    CLAIMS

Claimant's arbitration demand includes claims for violations of the Fair Employment and Housing Act, wrongful termination of employment, and retaliation in violation of the Family Medical Leave Act and the California Family Rights Act. The gravamen of his claims are his allegations that he was subjected to a hostile work environment and discrimination due to his race, national origin, and disability; that respondents failed to provide a reasonable accommodation for his disability and to engage in the interactive process; and that he was discharged in violation of public policy.

## II.    GROUNDS FOR MOTION

Peggy Stephens asserts she is entitled to summary judgment because she was claimant's supervisor and not his employer and did not engage in any form of unlawful harassment.

1

Travelers asserts it is entitled to summary judgment because claimant cannot prove he suffered an adverse employment action based on a protected status, suffered any form of unlawful harassment, was denied a reasonable accommodation, or was discharged.

## III.    MATERIAL FACTS PRESENTED BY RESPONDENTS

The evidence submitted in support of respondents' motion consists of excerpts of claimant's deposition testimony and exhibits marked during his examination.[1]  The facts relied upon are listed in a separate statement of material facts.  Claimant submitted a response to the separate statement in which he identifies facts that are disputed and undisputed.  The following is a summary of the material facts both sides say are undisputed, plus facts that are disputed by claimant but for which he cites evidence that does not create a triable issue.

Claimant began working for Travelers in 2011.  During his employment, claimant worked in claims and was promoted from the operations division to the property division in January 2012, and from an Inside Property Adjuster position to an Outside Property Adjuster position in March 2015. Claimant held the latter position until his employment ended in 2019.

Claimant received overall performance ratings of "meets expectations" or "fully meeting expectations" in each performance review he received.  He received salary raises in January 2012, October 2012, March 2015, October 2015, and April 2018.  As a result of the raises, claimant's annual salary increased from $44,000 when he was hired to $80,000 at the time his employment ended.

During his employment, claimant applied but was not selected for the positions of Risk Control Associate, Outside Property CAT, Underwriting Trainee, Property Unit Manager, and Technical Specialist.  Claimant holds the opinion that his race was a reason he did not receive the positions, but he admits he has no facts to show his race was a factor.

Claimant adjusted claims assigned to him by loss coordinators Chris Bremmer and Melissa Copeland.  Neither person took any actions towards claimant based on his race.  Claimant does not recall any jokes or negative statements by any Travelers managers made to him or about him based

---

[1] Travelers submitted additional evidence with its reply brief.  Claimant objected to the evidence and I have not considered it.

2

on his race or national origin. Claimant also does not recall any managers making negative statements, comments, or jokes to him or in his presence about people with disabilities.

Ms. Stephens became claimant's manager in 2014. Claimant states that during a one-on-one meeting in February 2014, Ms. Stephens made "unfounded accusations" against him and used body language and a tone of voice that "indicated she did not care," all because of his race. Claimant further states that in February 2014, because of his race, Ms. Stephens embarrassed him in front of colleagues at a meeting by "calling" him out for sleeping when he was not. Claimant also states Ms. Stephens had a "vendetta" against him because he chose not to socialize or engage in work banter.

On February 28, 2014, claimant emailed HR managers Cheryl Allan and Rosalind Baker to report Ms. Stephens was harassing him. Allan met with claimant on March 3, 2014. After the meeting, claimant had no problems with Ms. Stephens for three to six months but states she began harassing him again by not giving him help with his work and not paying him fairly. Stephens also made unspecified comments about the "demographics" of people who lived in "less affluent areas."

David Gosney became claimant's manager in December 2018. On January 24, 2019, claimant requested a leave of absence from January 28 to April 21, 2019, due to an unspecified health condition. Travelers granted the request and designated it as FMLA and CFRA leave. It did not ask claimant to disclose the nature of his health condition.

On April 21, 2019, Travelers sent a letter to claimant stating that as of that date he had "exhausted his job-protected FMLA/CFRA leave" and to contact the company if he had any questions. The letter did not say that claimant's employment was terminated. Claimant did not contact the company for clarification of anything in the letter.

Claimant returned to work on April 23, 2019. He did not request any accommodations on his return. On April 24, claimant felt Mr. Gosney spoke to him in a "condescending" manner about how Travelers operates and told him to go on the computer and start taking claims. As a

result, on April 25 he told Mr. Gosney he was resigning from his employment and would work two

more weeks.

Claimant gave this testimony about why he resigned: "My initial return to work, first day

back to work I did not receive anything. Second day is when this conversation occurred with Mr.

Gosney. At that point is when I explained to him that the way they were treating me was not

correct, therefore I do not want to deal with this. Therefore I give two weeks notice, and after I

gave my two weeks notice is when I was bombarded with claims."

Mr. Gosney asked claimant if he needed anything during his remaining two weeks and

claimant did not request any accommodations.  Claimant worked on April 26 and was hospitalized

on April 27.  He did not return to work and his employment ended on May 8, 2019.

On July 23, 2019, claimant filed an administrative complaint with the California

Department of Fair Employment and Housing alleging discrimination, harassment, retaliation,

wrongful termination, and related claims and obtained an immediate right-to-sue notice.

IV.   **MATERIAL FACTS PRESENTED BY CLAIMANT**

Claimant submitted a separate statement in which he identifies facts he contends raise

disputed issues of material fact.  The supporting evidence he cites is in his 2-page declaration and

excerpts of his deposition testimony and interrogatory responses, deposition testimony of Cheryl

Allan, Peggy Stephens and David Gosney, the declaration of Abie Kamara, and various

documents.[2]  The following is a summary of the facts for which claimant has provided evidentiary

support in addition to the undisputed facts summarized above.

Ms. Stephens became claimant's Field Property Lead Manager on or about 2014.  She is

Anglo-American or white and talked to claimant in an unspecified way that showed she considered

him inferior due to his race.  Once in a meeting of thirty to forty people, Ms. Stephens yelled

across the room to claimant, "You are sleeping." Claimant was not sleeping and was humiliated.

When an outside position opened in 2015, Ms. Stephens did not offer claimant the job he

---

[2] The Kamara declaration states she worked at Travelers from 2011 to 2015 and purports to describe events involving her supervisor at unspecified times.  The declaration consists of statements and unsupported conclusions about things that are not relevant to the claims in this case and is insufficient to raise any triable issues of material fact.

4

wanted Sacramento near his home. She directed that he be assigned to the Bay Area, which required that he move.

Ms. Stephens continued to be an executive until the end of claimant's employment. She did not contact claimant during his 2019 medical leave and did not contact him after he said he was resigning.

Claimant's declaration states his conclusion that he was "qualified" for various positions he applied for during his employment and did not receive due to his race. Claimant's opposition does not include any evidence that corroborates or supports this conclusion.

Claimant never wanted to leave Travelers and intended to stay with the company when his leave ended in April 2019. When claimant announced his resignation, Mr. Gosney made no effort to find out what was wrong and do an interactive process or provide an accommodation.

V.     **ANALYSIS**

A.     **Summary Judgment Standard**

Section 13 of the parties' arbitration agreement states: "The parties have the right to file pre-hearing motions, including dispositive motions (e.g., dismissal or summary judgment), in a form consistent with the Federal Rules of Civil Procedure. The arbitrator shall consider and rule on such motions in advance of the commencement of the arbitration hearing, and such consideration and ruling shall be consistent with the standards set forth in the Federal Rules of Civil Procedure."

A motion for summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250. The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.

*Celotex*, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the nonmoving party's case. *Id.*; *Horphag Research Ltd. v. Garcia* (9th Cir. 2007) 475 F.3d 1029, 1035.

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252. A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

**B.      Claims for Unlawful Discrimination**

Claimant's first and second causes of action allege unlawful discrimination based on race, national origin, and disability by Travelers.[3] To establish these FEHA claims, claimant must prove that Travelers discharged or subjected him to another adverse employment action and that his race, national origin, or disability were substantial motivating reasons for the discharge or adverse employment action. (CACI No. 2500; Judicial Council of California Civil Jury Instructions (2019 edition.))

There is an adverse employment action if an employer has taken an action that "taken as a whole, materially and adversely affected the terms, conditions, or privileges of" an employee's employment. A "substantial motivating reason" is a reason that actually contributed to the discharge or adverse employment action. (CACI No. 2507.)

In his first cause of action for disability discrimination, claimant alleges that Travelers terminated his employment due to his physical disability. It is apparent that claimant bases this on the theory of constructive discharge.

_____

[3] Every claim is claimant's complaint is alleged against Travelers and Ms. Stephens. During the hearing of the motion, claimant's counsel stated that claimant is not pursuing any claims against Ms. Stephens except the claim for unlawful harassment.

To establish constructive discharge, claimant must prove that respondent, through its officers, directors, managing agents, or supervisory employees "intentionally created or knowingly permitted working conditions to exist that were so intolerable that a reasonable person in [claimant's] position would have had no reasonable alternative except to resign.  In order to be sufficiently intolerable, adverse working conditions must be unusually aggravated or amount to a continuous pattern. In general, single, trivial, or isolated acts of misconduct are insufficient to support a constructive discharge claim."  (CACI No. 2510; Judicial Council of California Civil Jury Instructions (2019 edition.))

Claimant's opposition argues that he was constructively discharged because Traveler's sent the April 21 letter telling him his leave was no longer job-protected and he reasonably interpreted the letter to mean he could be terminated immediately unless he showed up for work. He further argues that when he returned to work Mr. Gosney spoke to him condescendingly when instructing him on company procedures, only made perfunctory inquiries about how he was doing, and loaded him with work, and these things caused stress and made him resign.

As noted above, the facts show claimant requested and was granted a leave until April 21. The April 21 letter stated that as of that date he had "exhausted his job-protected FMLA/CFRA leave" and to contact the company if he had any questions.  Claimant has not cited anything in the letter that was factually or legally incorrect.  The letter did not say that claimant's employment was terminated or include any statements that threatened termination.  Claimant did not contact the company for clarification of anything in the letter.  Claimant testified that he was given no work on his first day back and was he was "bombarded with claims" after he submitted his resignation on his second day back.

These facts fail to show that Travelers intentionally created conditions so intolerable that a reasonable person in claimant's position would have had no reasonable alternative except to resign.  There is nothing in the April 21 letter that would have caused a reasonable person to believe he had no alternative except to resign.  In fact, claimant must not have had that belief because he did not resign when he received the letter; he returned to work.  Thus, the letter did not

7

force him to resign and no reasonable employee could have felt forced to resign due to the contents of the letter. The facts also show that claimant did not resign because he was "bombarded with claims." He testified that happened after he submitted his resignation, not before.

Claimant's testimony describes nothing about the behavior of Mr. Gosney in April 2019 that a reasonable person would have considered intolerable. The statements claimant found condescending were isolated, not aggravated, and not part of a continuous pattern.

Accordingly, I do not find there is any evidence to support a discrimination claim based on the adverse action of the termination of claimant's employment. Claimant has failed to meet his burden to show that there is a genuine issue of material fact as to that issue.

In his second cause of action for race and national origin discrimination, claimant does not allege a specific adverse action, but I assume he contends that he suffered an adverse action when he was not selected after he applied for new positions, which is specifically alleged in his ninth cause of action, in addition to being constructively discharged.

Claimant's evidence shows he applied but was not selected for several positions during his employment. He testified that his race was the reason he did not receive the positions, but he admits he has no facts to show his race was a factor. He also has not submitted any evidence that describes his qualifications for any position he sought, identifies the person or persons who made the decision not to grant his applications, or describes any facts to support his conclusion or prove that his race was a factor.

An employee's subjective beliefs in an employment discrimination case do not create a genuine issue of fact. He must provide evidence relating to the challenged adverse action and the motivation of the decision makers and prove a causal link between a prohibited motivation and the adverse action. (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1159.) Claimant has failed to do so.

## C.    Claims for Unlawful Harassment

Claimant's third and fourth causes of action allege unlawful harassment based on race, national origin and disability by Travelers and Ms. Stephens. He specifically alleges that Ms.

8

Stephens created a hostile work environment by humiliating him in meetings and by making frivolous accusations due to his race.

To establish these FEHA claims, claimant must prove that he was subjected to unwanted harassing conduct due to his race, national origin, or disability, that the harassing conduct was severe or pervasive, and that a reasonable person in claimant's circumstances would have considered the work environment to be hostile or abusive. (CACI No. 2521A.)  "Severe or pervasive" means conduct that alters the conditions of employment and creates as hostile or abusive environment.  Factors to be considered include the nature of the conduct, how often and over what period it occurred, and the extent to which it unreasonably interfered with an employee's work performance. (CACI No. 2524.)

Unlawful harassment includes verbal harassment such as "epithets, derogatory comments or slurs on a basis" prohibited by the FEHA. (Cal. Code Regs., tit. 2, § 11019(b)(2).  However, harassment that is occasional, isolated, or sporadic is insufficient.  Claimant must show harassment of a repeated, routine or generalized nature, especially when the harassing conduct is not severe. (*Lyle v. Warner Bros. Television Productions* (2006) 38 Cal.4th 264, 283-285; *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 130-131.)

Claimant's testimony shows that Ms. Stevens talked to him in an unspecified way on unspecified days that showed she considered him inferior due to his race, in 2014 humiliated him in a meeting of thirty to forty people by yelling that he was sleeping, in 2015 did not offer him a job he wanted in Sacramento, and on unspecified dates made unspecified comments about the "demographics" of people who lived in "less affluent areas."  This evidence does not raise a triable issue of fact regarding unlawful harassment.

Claimant's testimony does not describe facts that show Ms. Stephens said or did anything towards claimant because of his race or motivated by racial bias.  Claimant's subjective belief that she considered him inferior due to his race is not sufficient to prove harassing conduct due to his race.  More is required.  Even if hostility towards claimant due to his race was the reason for Ms. Stephens' conduct, the conduct claimant describes does not include evidence of racial epithets,

9

racially derogatory comments, or racial slurs.  It was not severe or pervasive unlawful harassment in any sense and he has presented no evidence to support a finding that it altered the conditions of employment and created a hostile or abusive environment.

### D.    Claim for Failure to Accommodate

Claimant's fifth cause of action alleges a claim for failure to reasonably accommodate a disability. To establish this FEHA claim, claimant must prove that he had a condition that limited a major life activity, that he was able to perform his essential job duties with reasonable accommodation for his condition, that respondent failed to provide reasonable accommodation for his physical condition, and that failure to provide reasonable accommodation was a substantial factor in causing harm. (CACI No. 2541.)  Reasonable accommodation under means "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." (*Nadaf-Rahrov v. Neiman Marcus Grp., Inc.* (2008) 166 Cal.App. 4th 952, 974.)

Claimant's complaint alleges that in April 2019 he "requested that Defendants make a reasonable accommodation for his physical disability so that he would be able to perform the essential job requirements" and that respondent "refused said accommodation and refused to discuss any other potential reasonable accommodation it might afford" to him.

Claimant has presented no evidence describing his physical disability or the form of reasonable accommodation recognized under the FEHA that he required to perform his essential job duties when he returned to work in April 2019 and his testimony disproves the allegation that he requested an accommodation that respondent failed to provide.  When asked in deposition if he requested any accommodations to perform his job when he returned to work in April 2019, claimant gave these answers: "I did not ask for my accommodations when I returned to work at that time" and "I did not ask for any accommodations." This unequivocal testimony defeats his claim that respondent failed to reasonably accommodate a disability he had.

10

### E.     Claim for Failure to Engage in Interactive Process

Claimant's sixth cause of action alleges that respondent to engage in a good faith interactive process. To establish this FEHA claim, claimant must prove that he had a physical condition known to respondent, that he requested that respondent make reasonable accommodation for his physical condition, that he was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that she would be able to perform the essential job requirements, and that respondent failed to participate in a timely good-faith interactive process with him to determine whether reasonable accommodation could be made (CACI No. 2546.)

"Two principles underlie a cause of action for failure to provide a reasonable accommodation. First, the employee must request an accommodation. Second, the parties must engage in an interactive process regarding the requested accommodation and, if the process fails, responsibility for the failure rests with the party who failed to participate in good faith." (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 54, internal citations omitted.)

When asked if he requested any accommodations to perform his job when he returned to work in April 2019, claimant gave these answers in his deposition: "I did not ask for my accommodations when I returned to work at that time" and "I did not ask for any accommodations." This testimony defeats his claim that respondent failed to engage in a good faith interactive process.  The duty to do so never arose because claimant never requested an accommodation.

### F.     Claim for Retaliation

Claimant's seventh cause of action alleges unlawful retaliation.  To establish this FEHA claim, claimant must prove that he engaged in a form of protected activity, that respondent discharged or subjected him to another adverse employment action, and that his protected activity was a substantial motivating reason for the discharge or adverse employment action. (CACI No. 2505.)

Claimant's complaint alleges that his disability, race, and national origin "were the

11

reasons" respondent retaliated against him. The complaint does not allege he suffered retaliation for engaging in any form of protected activity and he has not presented evidence that raises a disputed issue of fact on that issue.

Claimant's retaliation claim fails because he has not alleged, and his evidence does not show, he engaged in any protected activity that motivated any adverse employment actions taken against him.

### G.    Claim for Failure to Prevent Retaliation

Claimant's eighth cause of action alleges a failure to prevent unlawful retaliation. Claimant cannot prevail on this claim because his retaliation fails. (*Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1314.)

### H.    Claim for Failure to Promote

Claimant's ninth cause of action alleges he was denied promotions and raises due to his race and national origin. As with his discrimination claims, to establish this FEHA claim, claimant must prove that respondent denied him a promotion or raise and that his race or national origin were substantial motivating reasons for those decisions.

As discussed above, claimant's evidence shows he applied but was not selected for several positions during his employment. His evidence does not describe his qualifications for any position he sought, does not identify the person or persons who made the decision not to grant his applications, and does not describe any facts to support his allegation that his race was a factor. He admits he has no facts to show his race was a factor and rests on his uncorroborated opinion that his race was a reason he did not receive the positions. Claimant's subjective belief that his race was a reason he was not selected is insufficient to raise a triable issue.

Claimant's salary was raised in January 2012, October 2012, March 2015, October 2015, and April 2018. His complaint does not allege and his evidence does not describe a time when he should have received a raise but did not or show any facts to support his allegation that race was ever a factor in his compensation. Claimant's subjective belief that his race was a reason he did not receive a raise is insufficient to raise a triable issue.

12

I find claimant had not shown that there is a genuine issue of material fact concerning the discrimination alleged in his ninth cause of action.

### I.   Claim for Wrongful Termination

Claimant's tenth cause of action alleges that respondent constructively terminated his employment in violation of public policy. This claim fails because, as discussed above, the facts presented do not establish that respondent intentionally created or knowingly permitted intolerable conditions that forced claimant to resign.

### J.   Interference with FMLA and CFRA Leave

Claimant's eleventh cause of action alleges respondent violated the FMLA and CFRA by terminating his employment "on April 21, 2019, while he was FMLA/CFRA leave." This claim fails because, as discussed above, the evidence shows that respondent did not terminate claimant's employment. The facts presented do not establish that respondent intentionally created or knowingly permitted intolerable conditions that forced claimant to resign.

### VI.   CONCLUSION

Respondents have met their burden by showing that there is an absence of evidence supporting claimant's case and that they are entitled to an award in their favor as a matter of law. Claimant has not met his burden to make an affirmative showing of facts as to those issues for which he has the burden of proof at trial. Therefore, the motion for summary judgment is granted.

Date: December 29, 2020

David G. Freedman
Arbitrator

13

**EXHIBIT F**

Performance Evaluation (&lt;20

# Manager Document - Completed

Brent Lindsey

**Job Title:** Claim Rep, Outside Property F
**Document Type:** Performance Evaluation (&lt;20
**Template:** Individual Contributor
**Status:** Completed

**Manager:** Joseph Salerno
**Period:** 01/01/2015 - 12/31/2015
**Document ID:** 380477
**Due Date:** 12/31/2015

## Section 1 - Goals/Objectives

Foundation of Quality - Technical Skill

Description:
Apply Claim functional knowledge and skill throughout all phases of every claim (Assignment, Coverage, Investigation, Evaluation, Resolution) in compliance with Company standards.
Analyze and determine coverage
Analyze and evaluate damages
Determine and assign liability
Determine compensability
Set and maintain reserves (indemnity and expense)
Identify and pursue all potential risk transfer and recovery opportunities
Identify and pursue potential fraud
Resolve and settle claim
This goal supports the Technical Skill Foundation of Quality and the following Claim strategies: Provide Compelling Claim Service and Achieve Optimal Outcomes.
Measurement:
File Review
% Meets from File Review questions (people view) relating to Technical Skills findings and observations from Self, Managerial, Focus and Commentary (e.g., coverage decisions/other coverages explored; analysis of causation/damages, liability and evaluation; quality of estimates and payments).
Key Performance Indicators (KPI)
None.
Observations
Manager observations of trends identified from file reviews, Ride-alongs, sit-alongs, listening to recorded statements, roundtables, etc.
Feedback from others (e.g., field trainers, specialized resources, National CAT Center, other third party observations).
Use of investigation techniques (e.g., scoping methods, scene photos/diagrams).

**Manager Rating:** 3 - Meets
**Weight:** 0%

Brent transitioned from an Inside Claim Representative (ICR) to an Outside Claim Representative (OCR) on March 23rd, 2015.

**Manager Comments:**

Brent's overall score of 98.2% in the Technical Skill foundation is above the office average of 97.2%. His above average result is indicative of the ability to acclimate quickly to his new role.



EXHIBIT
36
11·6·20 mP

Travelers000299

Provide Compelling Claim Services, Drive the Information Advantage, and Partner for Mutual Success.
Measurement:
File Review
Assessment should consider Product Overall File Rating from Self, Managerial, and Focus Reviews, as well as information from Commentary Reviews and performance within Foundations and Phases. Assessment should also consist of commentary on significant environmental factors, including workload volumes, unusual complexity or other significant outlying factors.
Aggregated Product Ratings
Key Performance Indicators (KPI)
None
Observations
Actual productivity relative to Product Established Productivity Guidelines for Office
Ownership demonstrated on assigned and reassigned work
Inventory Management including inventory assumption, notices to closings, proactive movement of files to resolution jurisdiction/complexity of claims, management of age of inventory
Desk Management including diary management, mail and phone call/inquiry management

**Manager Rating:** 3 - Meets
**Weight:** 0%

**Manager Comments:** Brent's overall file results demonstrate his ability to follow a disciplined and consistent approach in all phases of claim (assignment, coverage, investigation, evaluation and resolution) handling. This leads to the performance results in each foundation outlined in prior sections, all while still new to the outside property role.

Created By :   Profile                           01/14/2016  8:03PM

Foundation of Quality-Engagement-Mutual Success

Description:
Support and preserve the Travelers brand, reputation and culture internally and externally in all interactions to contribute to the overall success of the unit, office and the Claim organization)
Build and foster collaborative working relationships with co-workers, business partners and/or agents/brokers
Participate in activities/opportunities that foster cooperation and a unified, coordinated effort/solution within the unit, office or country-wide
Share knowledge with other claim professionals (e.g., mentor a new hire or trainee; teach a topic of expertise to the unit)
This goal supports the Engagement Foundation of Quality and the following Claim strategies: Partner for Mutual Success and Achieve Optimal Solutions.
Measurement:
File Review
% Meets regarding quality of contacts/interactions from File Review Engagement questions (people view) from Self, Managerial and Focus reviews and trends from Commentary reviews (e.g., communication to Underwriting, account, agent/broker of coverage issues, reasons for denial, ROR/disclaimers, excess exposure to account; ARN generation; compliance with account-specific SAC guidelines; responsiveness to account, agent, broker, Underwriting inquires/complaints)
Key Performance Indicators (KPI)
None.
Observations
Manager Observations of actions taken to build, enhance and/or maintain partnerships externally with agents, brokers or business partners and internally within team and across the organization
Feedback from peers and others internally
Feedback from agents/business partners (e.g., compliments/ complaints; feedback from CAEs, TIS, Subro, Staff

Counsel)
Participation in Agency/business partner visits, Office Tours, Marketing/Underwriting business and sales meetings; CAE Account Reviews; National Accounts Employer Schools, etc.)

**Manager Rating:** 3 - Meets
**Weight:** 0%

Brent utilizes his business partners to ensure the overall success of the Travelers brand. This includes timely notification of agents/brokers when there is a customer dispute, or complete coverage denial. He consistently involves Insured business contacts gearing around the preferences outlined in SAC instructions.

**Manager Comments:**

He has presented in multiple ERT sessions to help facilitate the training of reps outside of the property department. Brent also has often received subrograms, indicating his prompt and accurate assistance with setting up our subro department for recovery success.

Created By : Profile                    01/14/2016 8:03PM

## Section 2 - Individual Contributor General Competencies

To view definitions of Individual Contributor General Competencies, click here.

Accountability

Description:Takes ownership and responsibility for actions and outcomes, performance and results.

**Manager Rating:** 3 - Meets

Created By : Template                   01/14/2016 8:03PM

Analytical Thinking

Description:Identifies current or future problems or opportunities, analyzes, synthesize and compares information to understand issues, identifies cause/effect relationships and explores alternative solutions to support sound decision making.

**Manager Rating:** 3 - Meets

**EXHIBIT G**

Interim Review

# Manager Document - Completed

Brent Lindsey

**Job Title:** Claim Rep, Outside Property F
**Document Type:** Interim Review
**Template:** Interim Review
**Status:** Completed

**Manager:** Dennis Sullivan
**Period:** 01/01/2016 - 06/30/2016
**Document ID:** 398973
**Due Date:** 06/30/2016

## Section 1 - Progress Update

What Went Well

Description:

As you reflect on the goals and objectives set for this year - and competencies most critical for success - describe what went well.

Foundation of Quality - Technical Skill

Your quality score for the Technical Skill foundation at mid-year is 98.4% which is above the office average of 98.2%. Good job with this result! Keep up the great work!

You have been referring the appropriate losses to TIS and contacting subro when required.

Foundation of Quality - Strategy

**Manager Comments:**

Quality score for the Strategy foundation at mid-year is 97.7% compared to the office average of 98.6%.

You have also achieved 49% first call settlements in 2016 YTD. Great work!

Foundation of Quality-Engagement-Compelling Claim

One of Property's most important KPI's is the 24 hour contact goal of 90%. You have achieved a 24 hour contact result of 90% YTD. You have done an



EXHIBIT
37
11·6·20   MP

CONFIDENTIAL

Travelers000318

excellent job meeting the goal as of mid-year, continue to focus aggressively on achieving 24 hour contact to ensure success through the end of the year.

Quality score for the Engagement foundation at mid-year is 95.2% and the office average is 98.8%.

You have achieved a Net Promoter Score of 66.7% year to date. This result is above the Property Countrywide result of 53.7% and the Northern California Property result of 42.4%. Outstanding job here keep up this amazing work!!!

You have also done a very good job staying on top of your customer follow up calls.

**Foundation of Quality - Information Accuracy**

Quality scores for the Information Accuracy foundation at mid-year is 97.9% compared to the office average of 96.3%. Keep up the great work!

Your file documentation is complete and concise.  You are capturing all the required data points including the clock screen, COL, SCOL, and participants.

**Aggregate view of overall file quality**

Your overall Self Review quality at mid-year is 97.5% with the office average being 98.1%.

You have received a total of 126 new notices through June 2016 and 95% of those have been closed within 30 days.

You have done a good job staying on top of your inventory and overall desk management.

**Foundation of Quality-Engagement-Mutual Success**

You have submitted 5 ARNs YTD.

CONFIDENTIAL

Travelers000319

**Manager Rating:** Fully Meeting Expectations

**Manager Comments:**

You have positioned yourself for a good year.  Your KPIs are high, you are excellent at interacting with the Insureds and your grasp and understanding of the OCR role will continue to improve every day. Keep up the good work.

As of midyear, you are fully meeting the expectations of the position. Thank you for your contribution, it is greatly appreciated!

## Section 3 - Review Date

Date Evaluation was Reviewed with Employee

- Date:  07/19/2016

| | | |
|---|---|---|
| Created By : | Template | 02/22/2016 11:06AM |
| Last Modified By : | Dennis Sullivan | 07/19/2016  7:06PM |

## Section 4 - Employee Comments

**Employee Comments:**

Attachments
No Attachments have been added to this document

Audit History

| | | |
|---|---|---|
| **Created By** : | N4FD9D | 02/22/2016 11:06:12AM |
| **Transferred From** : | Nathan Senti | 07/12/2016  4:57:21PM |
| **Transferred To** : | Dennis Sullivan | 07/12/2016  4:57:21PM |
| **Transferred By** : | Nathan Senti | 07/12/2016  4:57:21PM |
| **Acknowledged By** : | N54C71 | 07/19/2016  7:14:35PM |
| **Completed By** : | Dennis Sullivan | 07/19/2016  7:18:34PM |
| **Last Modified By** : | Dennis Sullivan | 07/19/2016  7:18:34PM |

**EXHIBIT H**

Performance Evaluation (&lt;20

# Manager Document - Completed

Brent Lindsey

**Job Title:** Sr Claim Rep Outside Prop F
**Document Type:** Performance Evaluation (&lt;20
**Template:** Individual Contributor
**Status:** Completed

**Manager:** Keith Pearman
**Period:** 01/01/2017 - 12/31/2017
**Document ID:** 578176
**Due Date:** 12/31/2017

## Section 1 - Goals/Objectives

Optimal Outcomes in File Handling

Description:

Apply Claim functional knowledge and technical skill throughout all phases of every claim (Assignment, Coverage, Investigation, Evaluation, and Resolution) in compliance with Company and jurisdictional requirements. Leverage appropriate tools and technologies.

Measurement:

Manager observations of strengths and opportunities identified from file reviews, ride-alongs/re-inspections, sit-alongs, listening to recorded statements, roundtables, etc.
Feedback from others (field trainers, specialized resources, National CAT Center, other third party observations, etc.).

**Manager Rating:** 3 - Meets
**Weight:** 0%

**Manager Comments:** Brent, You strive for Optimal Outcomes in all your files thru the Assignment by quickly calling the insured. Your file have coverage caption and you explain to the insured on what is covered by there policy. Make sure to be very detailed focused in your Investigation. You are an early adaptor and leverage the new tools introduced this year.

Yourself reviews Grand total was 98.5 % vs the NCCC at 97.2%

Created By :   Profile          01/10/2018  3:32PM

Provide Compelling Claim Service

Description:

Provide exceptional customer service throughout the claim life cycle in compliance with business imperatives. Develop an initial and on-going relationship with the customer that exemplifies Secured, Respected and Cared



EXHIBIT
40
11·6·20   mp

## Section 4 - Mgr Overall Comments/Rating

Mgr Overall Comments/Rating Summary

**Manager Rating:** 3 - Meets

**Manager Comments:**

Brent, Overall you are meeting expectation this year, you are doing a good job on helping/assisting teammates and working to promote mutual success.

I appreciate your hard work and flexibility you show toward our product.

## Section 5 - Review Date

Date Evaluation was Reviewed with Employee

- Date: 01/31/2018

| | | |
|---|---|---|
| Created By: | Template | 01/10/2018 3:32PM |
| Last Modified By: | Keith Pearman | 02/01/2018 9:44AM |

## Section 6 - Employee Comments

**Employee Comments:**

Attachments

No Attachments have been added to this document

Audit History

| | | |
|---|---|---|
| **Created By:** | Keith Pearman | 01/10/2018 3:32:11PM |
| **Acknowledged By:** | N54C71 | 02/01/2018 12:03:26PM |
| **Completed By:** | Keith Pearman | 02/01/2018 12:13:13PM |
| **Last Modified By:** | Keith Pearman | 02/01/2018 12:13:13PM |

**EXHIBIT I**

New Window

## Workforce Job Summary

**Brent Lindsey**          EMP                    Empl ID  001789636

Go To Job Data

### Job Information                                    Personalize | Find | [ ] | [ ]    First  < 1-36 of 36 >  Last

[ General ] [ Job Information ] [ Work Location ] [ Salary Plan ] [ Compensation ] [ PTPT ]

| Organizational Relationship | Empl Record | Effective Date | Seq | Annual Rate | Monthly Rate | Daily Rate | Hourly Rate | Currency | Change Percent | Components |
|---|---|---|---|---|---|---|---|---|---|---|
| EMP | 0 | 05/09/2019 | 0 | 83000.000 | 6916.667 | 319.231 | 39.903846 | USD | | Components |
| EMP | 0 | 05/03/2019 | 0 | 83000.000 | 6916.667 | 319.231 | 39.903846 | USD | | Components |
| EMP | 0 | 04/29/2019 | 0 | 83000.000 | 6916.667 | 319.231 | 39.903846 | USD | | Components |
| EMP | 0 | 04/23/2019 | 0 | 83000.000 | 6916.667 | 319.231 | 39.903846 | USD | | Components |
| EMP | 0 | 03/25/2019 | 0 | 83000.000 | 6916.667 | 319.231 | 39.903846 | USD | | Components |
| EMP | 0 | 03/22/2019 | 0 | 83000.000 | 6916.667 | 319.231 | 39.903846 | USD | | Components |
| EMP | 0 | 03/22/2019 | 1 | 83000.000 | 6916.667 | 319.231 | 39.903846 | USD | | Components |
| EMP | 0 | 01/28/2019 | 0 | 83000.000 | 6916.667 | 319.231 | 39.903846 | USD | | Components |
| EMP | 0 | 01/25/2019 | 0 | 83000.000 | 6916.667 | 319.231 | 39.903846 | USD | | Components |
| EMP | 0 | 01/25/2019 | 1 | 83000.000 | 6916.667 | 319.231 | 39.903846 | USD | | Components |
| EMP | 0 | 07/09/2018 | 0 | 83000.000 | 6916.667 | 319.231 | 39.903846 | USD | | Components |
| EMP | 0 | 04/01/2018 | 0 | 83000.000 | 6916.667 | 319.231 | 39.903846 | USD | 3.750 | Components |
| EMP | 0 | 10/01/2017 | 0 | 80000.000 | 6666.667 | 307.692 | 38.461538 | USD | | Components |
| EMP | 0 | 08/19/2017 | 0 | 80000.000 | 6666.667 | 307.692 | 38.461538 | USD | | Components |
| EMP | 0 | 07/01/2016 | 0 | 80000.000 | 6666.667 | 307.692 | 38.461538 | USD | | Components |
| EMP | 0 | 05/26/2016 | 0 | 80000.000 | 6666.667 | 307.692 | 38.461538 | USD | | Components |
| EMP | 0 | 10/01/2015 | 0 | 69000.000 | 5750.000 | 265.385 | 33.173077 | USD | | Components |
| EMP | 0 | 10/01/2015 | 1 | 69000.000 | 5750.000 | 307.692 | 38.461538 | USD | 15.947 | Components |
| EMP | 0 | 07/20/2015 | 0 | 69000.000 | 5750.000 | 265.385 | 33.173077 | USD | | Components |
| EMP | 0 | 04/27/2015 | 0 | 69000.000 | 5750.000 | 265.385 | 33.173077 | USD | | Components |
| EMP | 0 | 08/23/2015 | 0 | 56920.000 | 4743.333 | 218.923 | 27.365385 | USD | | Components |
| EMP | 0 | 08/23/2015 | 1 | 56920.000 | 5750.000 | 265.385 | 33.173077 | USD | 21.223 | Components |
| EMP | 0 | 07/09/2014 | 0 | 56920.000 | 4743.333 | 218.923 | 27.365385 | USD | | Components |
| EMP | 0 | 06/04/2014 | 0 | 56920.000 | 4743.333 | 218.923 | 27.365385 | USD | | Components |
| EMP | 0 | 05/20/2014 | 0 | 56920.000 | 4743.333 | 218.923 | 27.365385 | USD | | Components |
| EMP | 0 | 05/01/2014 | 0 | 56920.000 | 4743.333 | 218.923 | 27.365385 | USD | | Components |
| EMP | 0 | 05/01/2014 | 1 | 56920.000 | 4743.333 | 218.923 | 27.365385 | USD | | Components |
| EMP | 0 | 10/07/2013 | 0 | 56920.000 | 4743.333 | 218.923 | 27.365385 | USD | | Components |
| EMP | 0 | 08/22/2013 | 0 | 56920.000 | 4743.333 | 218.923 | 27.365385 | USD | | Components |
| EMP | 0 | 10/01/2012 | 0 | 56920.000 | 4743.333 | 218.923 | 27.365385 | USD | 8.830 | Components |
| EMP | 0 | 10/01/2012 | 1 | 56920.000 | 4743.333 | 218.923 | 27.365385 | USD | | Components |
| EMP | 0 | 07/16/2012 | 0 | 44000.000 | 3666.667 | 169.231 | 21.153846 | USD | | Components |
| EMP | 0 | 01/16/2012 | 1 | 51920.000 | 4326.667 | 199.692 | 24.961538 | USD | 18.000 | Components |
| EMP | 0 | 12/02/2011 | 0 | 44000.000 | 3666.667 | 169.231 | 21.153846 | USD | | Components |
| EMP | 0 | 12/01/2011 | 0 | 44000.000 | 3666.667 | 169.231 | 21.153846 | USD | | Components |
| EMP | 0 | 09/20/2011 | 0 | 44000.000 | 3666.667 | 169.231 | 21.153846 | USD | | Components |

[ Return to Search ]    [ Notify ]

CONFIDENTIAL                                          Travelers000396

**EXHIBIT J**

Job Data



CONFIDENTIAL

Travelers000390

New Window

| Work Location | Job Information | Job Labor | Payroll | Salary Plan | Compensation |

**Brent Lindsey**                                    Empl ID 001788636
Employee                                             Empl Record 0

Job Information Details  ?                                          Find     First   ' 21 of 36  ' Last

Effective Date 03/23/2015                                                   Go To Row

Effective Sequence 1                                Action  Pay Rate Change
HR Status  Active                                   Reason  Increase Due to Promotion
Payroll Status  Active                              Job Indicator  Primary Job

                                                                          History □

*Job Code CM0035 ⌕            Claim Rep Trainee Outside Prop
Entry Date 03/23/2015 �📅
Supervisor Level ⌕
Supervisor ID 001735204 ⌕    Nathan Senli

*Regular/Temporary Regular ∨           *Full/Part Full-Time ∨
Empl Class ∨                           *Officer Code None ∨
*Regular Shift 1st Shift - No Diff - N/A ∨   Shift Rate
                                       Shift Factor

Standard Hours  ?
Standard Hours         40.00           Work Period W    ⌕ Weekly
FTE         1.000000

Contract Number
Contract Number ⌕                      Next Contract Number
Contract Type

▸ 🇧🇷 Brazil
▸ 🇬🇧 United Kingdom
▸ 🇺🇸 USA
▸ 🇨🇦 Canada

Job Data        Employment Data         Earnings Distribution        Benefits Program Participation

Save | Return to Search | Notify | Refresh |            Update/Display    Include History    Correct History

Work Location | Job Information | Job Labor | Payroll | Salary Plan | Compensation

CONFIDENTIAL                                    Travelers000380

Job Data



New Window

Work Location | Job Information | Job Labor | Payroll | Salary Plan | Compensation

**Brent Lindsey**                                        Empl ID  001768636
Employee                                                 Empl Record  0

Job Information Details  ?                                              Find    First   1 of 36   Last

                                                                       Go To Row

        Effective Date  10/01/2015

        Effective Sequence  1                              Action  Pay Rate Change

            HR Status  Active                              Reason  Increase Due to Promotion

        Payroll Status  Active                          Job Indicator  Primary Job

                                                                       History ☐

            *Job Code  CM3466               Claim Rep. Outside Property F
            Entry Date  10/01/2015
        Supervisor Level
        Supervisor ID  001741865           Joseph Salerno

    *Regular/Temporary  Regular                  *Full/Part  Full-Time
        Empl Class                             *Officer Code  None
        *Regular Shift  1st Shift - No Diff - N/A    Shift Rate
                                                    Shift Factor

Standard Hours  ?

        Standard Hours       40.00          Work Period  W      Weekly
                FTE       1.000000

Contract Number

        Contract Number                          Next Contract Number
        Contract Type

⊡ Brazil

⊞ United Kingdom

⊞ USA

⊞ Canada

Job Data            Employment Data        Earnings Distribution      Benefits Program Participation

Save  |  Return to Search  |  Notify  |  Refresh         Update/Display    Include History    Correct History

Work Location | Job Information | Job Labor | Payroll | Salary Plan | Compensation

CONFIDENTIAL                                    Travelers000376

**EXHIBIT K**

Job Data

New Window

| Work Location | Job Information | Job Labor | Payroll | Salary Plan | Compensation |

**Brent Lindsey**                                    Empl ID  001788636
Employee                                             Empl Record  0

Job Information Details   ?                                      Find      First  ⁴ 12 of 36  ⁱ  Last

|                          |              |                      |                    |
|--------------------------|--------------|----------------------|--------------------|
| Effective Date 04/01/2018 |              |                      | Go To Row          |
| Effective Sequence  0     |              | Action  Pay Rate Change |                 |
| HR Status  Active         |              | Reason  Merit        |                    |
| Payroll Status  Active    |              | Job Indicator  Primary Job |             |

History ☐

*Job Code CM2101            Sr Claim Rep Outside Prop F
Entry Date 11/01/2017
Supervisor Level
Supervisor ID 001815773     Keith Pearman

*Regular/Temporary  Regular              *Full/Part  Full-Time
Empl Class                               *Officer Code  None
*Regular Shift  1 - Day (Mon - Fri); No Diff   Shift Rate
                                         Shift Factor

Standard Hours   ?

Standard Hours         40.00             Work Period  W      ⌕ Weekly
FTE          1.000000

Contract Number

Contract Number                          Next Contract Number
Contract Type

| Brazil |
| United Kingdom |
| USA |
| Canada |

Job Data          Employment Data          Earnings Distribution          Benefits Program Participation

| Save | Return to Search | Notify | Refresh |          | Update/Display | Include History | Correct History |

Work Location | Job Information | Job Labor | Payroll | Salary Plan | Compensation

CONFIDENTIAL                                    Travelers000371

**EXHIBIT L**

Atkinson Baker, Inc.
www.depo.com

Page 1

1              AMERICAN ARBITRATION ASSOCIATION

2

3
                                          )
4   BRENT LINDSEY, an individual,         )AAA Case No.:
                                          )01-19-0004-6106
5                           Claimant,     )
                                          )
6          VS.                            )
                                          )
7   TRAVELERS COMMERICIAL INSURANCE       )
    COMPANY, Inc. a Connecticut           )
8   Corporation, et al.                   )
                                          )
9                        Respondents,  )
                                          )
10  _____)

11

12                     DEPOSITION OF

13                     DAVID GOSNEY

14                 November 18TH, 2020

15

16

17

18

19
    ATKINSON-BAKER, INC.
20  (800) 288-3376

21

22

23  REPORTER BY:            JESSIECA J. PATE, CSR NO. 11793
    FILE NO.:               AE08272
24

25

Atkinson Baker, Inc.
www.depo.com

Page 30

1  was -- my assumption was he stopped me to say he was
2  quitting.
3      Q    Now, do you, um, why -- did you inquire as to
4  why he was quitting?
5      A    I did not.
6      Q    Did you ask him if there was something wrong?
7      A    I did not.
8      Q    Okay. Did it occur to you that maybe you were
9  giving him too much communication all at once?
10     A    I was providing information to him as he was
11 receiving claims so that he would know why a claim may be
12 received in a different area than he was used to getting.
13     Q    Okay. Thank you.
14          Now, in what manner had you been speaking
15 to him?
16     A    In a normal manner like I typically do.
17     Q    Okay. Now, do you feel like you were speaking
18 in a manner that he can easily receive?
19     A    Yes.
20     Q    Now, why do you say that?
21     A    It was my -- I normally speak with him and
22 anybody else that I am normally speaking with.
23     Q    Okay. Now, did it occur -- did you -- I guess
24 I already asked this. Did you at that point try to find out
25 why he was upset?

Page 31

1      A    I did not.
2      Q    Okay. And why not?
3      A    I don't recall.
4      Q    Thank you.
5          Is -- is it -- how did you like Brent as a
6  person?
7      A    I liked Brent as a nice person. I thought he
8  was a nice person.
9      Q    Did you --
10     A    Still think he's a nice person.
11     Q    -- want him to leave?
12     A    I did not.
13     Q    Have you ever -- did you ever communicate that
14 to him?
15     A    I did not.
16     Q    Okay. All right. I'm going to take about two
17 minutes here to see if there is anything more -- I tell you
18 what, we're going to take like a, um, ten minute break and I
19 want to review my notes to see if there is anything more I
20 want to ask.
21          So, let's go off the record right now if
22 that's all right with everybody.
23          MR. O'MALLEY: Okay. When would you like to come
24 back on?
25          MR. KOTTKE: Let's come back at 12:40 my time.

Page 32

1  That's specific time.
2          MR. O'MALLEY: Okay.
3
4          (Whereupon, proceedings were recessed for a break.)
5
6      Q    BY MR. KOTTKE: All right. Thank you
7  Mr. Gosney. I'm ready to go on the record again. Couple
8  other questions.
9          This log that we were just reading from,
10 was this a log that you made as the events occurred or
11 was that something you wrote as the events occurred?
12     A    That is something that I made right after, um,
13 it was during that week.
14     Q    All right. Were you asked to write all this
15 up?
16     A    I was recording it, yes. I was asked to.
17     Q    All right. Who asked you to write this up?
18     A    I'm trying to recall here. It was suggested
19 that I keep a log of the actions from my supervisor.
20     Q    Oh, okay. Who was your supervisor?
21     A    Peggy Stephens.
22     Q    Oh, okay. Thank you. Did she say why?
23     A    No.
24     Q    Okay. One other question here. You were, um
25 -- were you aware -- in contact or -- well, let me rephrase

Page 33

1  this.
2          About how many outside property claims
3  representatives were there in the Northern California
4  area in, say, 2018?
5      A    I don't know.
6      Q    Would you say it was around 30?
7      A    More or less.
8      Q    Okay. And how many of those People were
9  African American?
10     A    I don't know.
11     Q    Would you say it was more than five?
12     A    I don't know.
13     Q    Okay. Was Brent the only one?
14     A    No.
15     Q    Who was the other one?
16     A    I know there was at least one, there was more
17 than one African American in our team, Patricia Trawick was
18 on our name.
19     Q    All right. How do you spell that last name,
20 if you know? It doesn't matter, but the reporter is going
21 to write something down.
22     A    T-r-a-w-i-c-k.
23     Q    Okay. Can you think of any other claims
24 representative who was African American at Travelers at that
25 time?

David Gosney
November 18, 2020

30..33

Atkinson Baker, Inc.
www.depo.com

Page 34

1    A    Not off the top of my head.

2    Q    Thank you. All right. Just want to take a

3    moment here. Make sure I didn't miss anything.

4

5         (Pause in the proceedings.)

6

7    Q    BY MR. KOTTKE: Oh, yes. I have one question.

8    Are you familiar with the concept of a merit raise?

9    A    Yes.

10   Q    And what is a merit raise?

11   A    It's an increase in salary.

12   Q    All right. And is it, um -- all right. How

13   long have you worked at Travelers?

14   A    Approximately six years.

15   Q    How many merit raises have you received in

16   that six years?

17   A    I don't know.

18   Q    Is it three, more than three?

19   A    I would say -- I don't know. I mean, I don't

20   know.

21   Q    All right. Well, is it more than five.

22   A    I don't think so.

23   Q    All right. Somewhere between three to five?

24   A    That sounds about accurate.

25   Q    Okay. And how much -- is a merit raise -- how

Page 35

1    much money is -- is there any -- I'll do that again.

2         How much money would a merit raise

3    normally be, if that can stating?

4         MR. O'MALLEY: Objection to the form.

5    Q    BY MR. KOTTKE: All right. How much is one of

6    your merit raises?

7    A    $2,500.

8    Q    Okay. And another one?

9    A    I don't know the exact amounts of my merit

10   raises.

11   Q    All right. But about $2,500, is about what

12   your merit raises were?

13   A    I don't know exactly how much my merit raises

14   were.

15   Q    Oh, okay. Now, in 19-- um, let's see here.

16   Was there a time when you were -- had the same job as Brent?

17   A    Yes.

18   Q    And when was that?

19   A    Before my transition in July, 2018.

20   Q    July, 2018. And what was your salary at that

21   time?

22   A    I don't recall.

23   Q    Was it more than hundred thousand?

24   A    No.

25   Q    Was it more like $80-?

Page 36

1    A    That sounds more accurate.

2    Q    Okay. Was it $90-?

3    A    No.

4    Q    Somewhere between $80- and $90-?

5    A    Somewhere in that range.

6    Q    Okay. Thank you.

7         At any -- now you were mentioning some

8    of -- you were mentioning earlier certain things which

9    Brent had not done properly and that you noticed during

10   his leave. Was he written up for anything or was he

11   written up for any of those things?

12   A    Not by myself.

13   Q    Okay. Did you ever write him up?

14   A    No.

15   Q    Do you know of anyone who has ever written him

16   up?

17   A    I don't know if he was or not, I didn't do any

18   write up.

19   Q    Thank you. All right. That's all I have.

20   MR. KOTTKE: Um, do you have any questions

21   Mr. O'Malley?

22   MR. O'MALLEY: Just a few.

23   MR. KOTTKE: Okay. Cool.

24

25

Page 37

1         EXAMINATION

2    BY MR. O'MALLEY:

3    Q    You remember you were asked about the notes

4    that you took in connection with Mr. Lindsey's resignation,

5    you recall that testimony?

6    A    Yes.

7    Q    Did Ms. Stephens tell you what to write in

8    those notes?

9    A    She did not.

10   Q    Do those notes reflect your truthful and

11   accurate impressions of the conversations that you were

12   recording?

13   A    Yes.

14   Q    That's all I have.

15   MR. KOTTKE: Thank you, Counsel.

16         All right. So, we're going to -- just as

17   before, we'll stipulate to just following the Code of

18   how this transcript is to be handled.

19   MR. O'MALLEY: Agreed.

20   MR. KOTTKE: That's all I have. Thank you very much.

21         And thank you, Mr. Gosney for taking the

22   time to answer my questions and thank you for being

23   direct.

24   THE WITNESS: Thank you.

25   MR. O'MALLEY: And Mr. O'Malley, are you ordering a

Atkinson Baker, Inc.
www.depo.com

Page 38

1  copy of this transcript as well?
2      THE REPORTER:  Yes, ma'am.
3
4      (The proceedings were concluded.)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 39

1                REPORTERS' CERTIFICATE
2
3
4      I, JESSIECA J. PATE, CSR No. 11793, Certified
5  Shorthand Reporter, certify:
6      That the foregoing proceedings were taken before
7  me at the time and place therein set forth, at which time
8  the witness was put under oath by me;
9      That the testimony of the witness, the questions
10  propounded and all objections and statements made at the
11  time of the examination were recorded stenographically by me
12  and were thereafter transcribed;
13      That the foregoing is a true and correct
14  transcript of my shorthand notes so taken.
15      I further certify that I am not a relative or
16  employee of any attorney of the parties nor financially
17  interested in the action.
18      I declare under penalty of perjury under the laws
19  of California that the foregoing is true and correct.
20      Dated this 11th day of December, 2020
21
22
23
24  _____
              Jessieca J. Pate, CSR No. 11793
25

EXHIBIT M

## Ralph Kottke

| | |
|---|---|
| **From:** | Ralph Kottke |
| **Sent:** | Friday, November 13, 2020 1:11 PM |
| **To:** | David Freedman |
| **Cc:** | Joel O'Malley |
| **Subject:** | FW: Lindsey v. Travelers Arbitration - Meeting at 2 on 11/16/20 |

**Subject:** Lindsey v. Travelers Arbitration - Meeting at 2 on 11/16/20

Dear Mr. Freedman,

I have some points to raise in response to Mr. O'Malley's emails to you regarding the deposition.

Yes, Cheryl Allan's depo was of her in her personal capacity and we had good cause to depo her. She was the Claimant's Human Resources Manager the full eight years of his tenure at Respondent's . A key issue in this case is whether Respondent engaged in an interactive process re his concerns re racial discrimination and mental and physical disabilities and whether any accommodation was discussed and/or offered.

When beginning this depo we had the expectation that Ms. Allan had been monitoring his morale, physical and mental wellbeing as an employee under her department. At the depo we did find some attention to this by Ms. Allan in April 2014. She holding a meeting with Claimant's supervisor and him after receiving his complaint of racial discrimination.

We expected she would have done follow up on this over time. We also expected that she would take an interest in December 2017 and January 2018 through April 2018 when he was on medical leave. We expected she would have something to say about how she handled these events as his HR supervisor. This is something she would have been responding to as Cheryl Allan, not a PMK.

But it turned out she had little to say about anything she had done regarding Claimant after the meeting in 2014 until she did her final exit interview in May 2018. This was a surprise to Claimant's counsel.

We did get much general data applicable to Travelers in the depo, it is true. But our primary focus had been to get data about her as an individual. We just did not get much.

We ended the Cheryl Allan depo and began the PMK depo. We needed to get PMK answers. At that point we only had Cheryl Allan answers. Of course we needed to ask questions she had already answered in the Cheryl Allan depo because those answers were not PMK answers but Cheryl Allan answers. Counsel objected that the questions had been asked and answered which was improper as I did not have PMK answers. Ms. Allan also refused to answer saying she had already answered.

That leaves us with no PMK answers which Claimant has a right to. Therefore, **I move that the PMK witness be ordered to answer relevant questions as a PMK and not use the objection that she has already answered the questions in her personal deposition.**

The reference on this is CCP 2025.610:

*(a)  Once any party has taken the deposition of any natural person, including that of a party to the action, neither the party who gave, nor any other party who has been served with a deposition notice pursuant to Section 2025.240 may take a subsequent deposition of that deponent.*

*(b)  Notwithstanding subdivision (a), for good cause shown, the court may grant leave to take a subsequent deposition, and the parties, with the consent of any deponent who is not a party, may stipulate that a subsequent deposition be taken.*

*(c)  This section does not preclude taking one subsequent deposition of a natural person who has previously been examined under either or both of the following circumstances:*

*(1)  The person was examined as a result of that person's designation to testify on behalf of an organization under Section 2025.230 .*

As far as Mr. O'Malley's statement that claimant should pay for the PMK depo.  That is not proper.  We had a right to take Cheryl Allan's depo as a person and we have a right to take a PMK deposition. We had no intention to abuse Ms. Allan or run up Respondent's costs and will make the PMK depo as efficient as possible.

**As a second point, Mr. O'Malley stated in the deposition that you had ordered that testimony of Respondent's disparate treatment against Claimant was irrelevant.**

I do not believe you stated this in the Order but I imagine Counsel is referring your sustaining the following objections to Claimant's original PMK notice:

- No. 39 of the original PMK depo notice "Complaints by African Americans on YOUR staff of racial discrimination";
- "40.  YOUR statistics of adjusters showing number of African-American adjusters compared to the number of adjusters in CLAIMANT's division during relevant time periods;"
- Request for Production No. 1 "All documents showing pay of other adjusters in CLAIMANT'S department during relevant periods of their employment with RESPONDENT.

**I therefore respectfully request you reconsider your sustaining of objections to 39, 40 and Request for Production No. 1.**

Discrimination on the basis of race is a key part of Claimant's complaint.  See points 11-17,53.76.78.79, 89.  In particular point 89 states "Plaintiff was denied promotion and raises, on the basis of race and national origin discrimination and on the basis that Plaintiff complained to TCIC and TCICA about the harassment and discrimination he was experiencing."  These discovery requests are necessary for Claimant to prove his claim of racial prejudice.  There were about 35 persons in Claimant's  department, the Northern California Outside Claim Representatives Department. Claimant would be willing to limit this to year of 2018. We are also willing to have names redacted.

As far as comparative numbers of agents, this is an obvious indicator of prejudice which, coupled with other evidence, would prove Claimant's allegation.

Thank you for your consideration.

*Ralph A. Kottke, Esq.*
Lipeles Law Group, APC
880 Apollo St., Ste. 336
El Segundo, CA  90245
(310) 322-2211
(310) 322-2252 fax

**Privileged and Confidential Communication**
This electronic transmission, and any documents attached hereto, (a) are protected by the Electronic Communications Privacy Act (18 USC §§ 2510-2521), (b) may contain confidential and/or legally privileged information, and (c) are for the sole use of the intended recipient named above. If you have received this electronic message in error, please

**EXHIBIT N**

I am missing a copy of an order that you made following a discovery conference we had on 11/16/20. It would have dealt with the Cindy Allan PMK depo and some discovery requests I had made.

I would be grateful if you would email me a copy.

Sincerely,

*Ralph A. Kottke, Esq.*
Lipeles Law Group, APC
880 Apollo St., Ste. 336
El Segundo, CA 90245
(310) 322-2211
(310) 322-2252 fax

**Privileged and Confidential Communication**
This electronic transmission, and any documents attached hereto, (a) are protected by the Electronic Communications Privacy Act (18 USC §§ 2510-2521), (b) may contain confidential and/or legally privileged information, and (c) are for the sole use of the intended recipient named above. If you have received this electronic message in error, please notify the sender and delete the electronic message. Any disclosure, copying, distribution, or use of the contents of the information received in error is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and delete the original message and destroy all copies.

## Ralph Kottke

| | |
|---|---|
| **To:** | David Freedman |
| **Cc:** | 'Joel O'Malley' |
| **Subject:** | RE: AAA Case 01 19 0004 6106 - Lindsey v Travelers |
| **Attachments:** | 2020.11.13 Letter to Arbitrator page 1.pdf; 2020.11.13 Letter to Arbitrator page 2.pdf |

Dear Arbitrator Freedman,

Now I recall. You are right.  There was no written order made after the November 16 hearing.

However, on November 13 I had sent in the attached email.   I made motions for reconsideration regarding topics and requests for production in my Person Most Knowledgeable notice.  Respondent's counsel had previously objected to these topics and requests.  You had earlier sustained his objections in Discovery Order No. 1.

In the email I now moved for reconsideration.  I asked that topics 39 and 40 and RFP No. 1 be reinstated.   In the hearing you addressed my motions and denied them.  Does that accord with what you recall?

Sincerely yours,

*Ralph A. Kottke, Esq.*
Lipeles Law Group, APC
880 Apollo St., Ste. 336
El Segundo, CA  90245
(310) 322-2211
(310) 322-2252 fax

**Privileged and Confidential Communication**
This electronic transmission, and any documents attached hereto, (a) are protected by the Electronic Communications Privacy Act (18 USC §§ 2510-2521), (b) may contain confidential and/or legally privileged information, and (c) are for the sole use of the intended recipient named above. If you have received this electronic message in error, please notify the sender and delete the electronic message. Any disclosure, copying, distribution, or use of the contents of the information received in error is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and delete the original message and destroy all copies.


**From:** David Freedman <dgf@dfreedman.net>
**Sent:** Friday, January 8, 2021 6:19 PM
**To:** Ralph Kottke <ralph@kallaw.com>
**Cc:** 'AAA Jose Guerrero' <JoseGuerrero@adr.org>; 'Joel O'Malley' <JOMalley@nilanjohnson.com>; 'Nicole F. Dailo' <ndailo@nilanjohnson.com>
**Subject:** RE: AAA Case 01 19 0004 6106 - Lindsey v Travelers

My records do not show I issued an order after the Nov 16 conference.

**From:** Ralph Kottke <ralph@kallaw.com>
**Sent:** Friday, January 8, 2021 3:38 PM
**To:** David Freedman <dgf@dfreedman.net>
**Subject:** FW: AAA Case 01 19 0004 6106 - Lindsey v Travelers

Dear Arbitrator Freedman,

**EXHIBIT O**

1   Kevin A. Lipeles (Bar No. 244 275)
    Thomas H. Schelly (Bar No. 217 285)
2   Ralph A. Kottke (Bar No. 287363)
    LIPELES LAW GROUP, APC
3   880 Apollo Street, Suite 336
    El Segundo, California 90245
4   Telephone: (310) 322-2211
    Fax: (310) 322-2252
5
6   Attorneys for Claimant,
    BRENT LINDSEY
7

8

9                 **AMERICAN ARBITRATION ASSOCIATION**

10  BRENT LINDSEY, an individual,            | **AAA CASE NO. 01-19-0004-6106**

11                    Claimant,               | **CLAIMANT'S SPECIAL**
                                              | **INTERROGATORIES TO**
12  vs.                                       | **RESPONDENT (SET TWO)**

13  TRAVELERS COMMERCIAL
14  INSURANCE COMPANY, a Connecticut
    corporation; TRAVELERS CASUALTY
15  INSURANCE COMPANY OF AMERICA,
    a Connecticut corporation, PEGGY
16  STEPHENS, an individual; and DOES 1
    through 100, inclusive,
17

18                    Respondents.

19

20          PROPOUNDING PARTY:        BRENT LINDSEY

21          RESPONDING PARTY:         TRAVELERS INDEMNITY COMPANY

22          SET NO.:                  TWO

23

24          PLEASE TAKE NOTICE that Claimant hereby requests, pursuant to Code of Civil Pro-

25  cedure §2030.010 et seq., that Respondent Travelers Indemnity Company answer the following

26  Special Interrogatories in writing, under oath, and serve the answers demanded herein within

27  the time frame specified by the Code of Civil Procedure at Lipeles Law Group, APC, located at

28  880 Apollo Street, Suite 336, El Segundo, California 90245.

---

                                                                                    1
**CLAIMANT'S SPECIAL INTERROGATORIES TO RESPONDENT (SET TWO)**

## SPECIAL INTERROGATORIES

### SPECIAL INTERROGATORY NO. 12:

State the ANNUAL SALARY of CLAIMANT in for 2019.

For purposes of these interrogatories, the following definition shall apply:

"CLAIMANT" shall mean Claimant Brent Lindsey.

"YOU" or "YOUR" shall mean the person or entity to whom this Special Interrogatory is directed.

"ANNUAL SALARY" shall mean the base gross annual monetary compensation paid to an employee in a year.  It does include overtime.

"PROPERTY OUTSIDE CLAIM REPRESENTATIVE"  shall mean a Defendant representative working in the field in Northern California area investigating and settling property claims against Defendant.

"NORTHERN CALIFORNIA"  means Sacramento, San Francisco, Oakland and Modesto areas.

### SPECIAL INTERROGATORY NO. 1:

State the ANNUAL SALARY of all PROPERTY OUTSIDE CLAIM REPRESENTATIVES in the Northern California area in 2018.


LIPELES LAW GROUP, APC

Date: November 2, 2020


By: _Ralph A. Kottke_____

Ralph A. Kottke
Attorneys for Claimant
Brent Lindsey

CLAIMANT'S SPECIAL INTERROGATORIES TO RESPONDENT (SET TWO)

**EXHIBIT P**

1   Kevin A. Lipeles (Bar No. 244 275)
    Thomas H. Schelly (Bar No. 217 285)
2   Ralph A. Kottke (Bar No. 287363)
    LIPELES LAW GROUP, APC
3   880 Apollo Street, Suite 336
    El Segundo, California 90245
4   Telephone: (310) 322-2211
    Fax: (310) 322-2252
5
6   Attorneys for Claimant,
    BRENT LINDSEY
7
8
9                    **AMERICAN ARBITRATION ASSOCIATION**

10  BRENT LINDSEY, an individual,        | **AAA CASE NO. 01-19-0004-6106**

11              Claimant,                 | **CLAIMANT'S REQUESTS FOR**
                                          | **PRODUCTION TO RESPONDENT**
12  vs.                                   | **(SET TWO)**

13  TRAVELERS COMMERCIAL
14  INSURANCE COMPANY, a Connecticut
    corporation; TRAVELERS CASUALTY
15  INSURANCE COMPANY OF AMERICA,
    a Connecticut corporation, PEGGY
16  STEPHENS, an individual; and DOES 1
    through 100, inclusive,
17
18              Respondents.
19
20      PROPOUNDING PARTY:        BRENT LINDSEY
21      RESPONDING PARTY:         TRAVELERS INDEMNITY COMPANY
22      SET NO.:                  TWO
23
24          Pursuant to §§2031.010 et seq. of the Code of Civil Procedure, Claimant Brent Lindsey
25  hereby demands that Respondent Travelers Indemnity Company answer under oath these re-
26  quests for production, no later than 30 days after the effective date of service of this Request.
27  The place of inspection shall be the Lipeles Law Group, APC, 880 Apollo Street, Suite 336, El
28  Segundo, California 90245.

                                                                                        1
                **CLAIMANT'S REQUESTS FOR PRODUCTION TO RESPONDENT (SET TWO)**

**INSTRUCTIONS**

1.      As a general rule, within 30 days after you are served with these requests, you must serve your responses together with all responsive DOCUMENTS on the asking party and all other parties to the action who have appeared.

2.      Whenever a claim of privilege is made in response to any discovery request pursuant to §2031.240(b) of the Code of Civil Procedure, the materials or information claimed to be privileged shall be identified with reasons stated for the privilege claimed.

3.      Responses should set forth the request in full before the response.  Each objection should be followed by a statement of the reasons therefore.

**DEFINITIONS**

For the purposes of these requests for production, the following definitions shall apply:

1.      "ALL" means each, every, and any.

2.       "YOU" and "YOUR" mean and refer to the person or entity to whom this request for production is directed.

3.      "CLAIMANT" means and refers to the party serving this request for production.

4.       "W-2" shall mean the DOCUMENT  provided by YOU to an employee showing his income for the previous year. The employee uses this DOCUMENT to report his income to the Internal Revenue Service for his taxes.

5.       "PROPERTY OUTSIDE CLAIM REPRESENTATIVE"  shall mean a Defendant representative working in the field in Northern California area investigating and settling property claims against Defendant.

6.       "NORTHERN CALIFORNIA"  means Sacramento, San Francisco, Oakland and Modesto areas.

**CLAIMANT'S REQUESTS FOR PRODUCTION TO RESPONDENT (SET TWO)**

## DEMAND FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 23:**

The W-2's of ALL "PROPERTY OUTSIDE CLAIM REPRESENTATIVES in for the year of 2018.

                                LIPELES LAW GROUP, APC

Date: November 2, 2020

                                *Ralph A. Kottke*

                        By: _____

                                Ralph A. Kottke
                                Attorneys for Claimant
                                Brent Lindsey

**CLAIMANT'S REQUESTS FOR PRODUCTION TO RESPONDENT (SET TWO)**

**EXHIBIT Q**

**AMERICAN ARBITRATION ASSOCIATION**

Brent Lindsey, an individual,

           Claimant,

v.

Travelers Commercial Insurance Company,
a Connecticut corporation; Travelers
Casualty Insurance Company of America, a
Connecticut corporation; The Travelers
Indemnity Company; and Peggy Stephens,
an individual,

           Respondents.

Case No. 01-19-0004-6106

**RESPONDENT THE TRAVELERS
INDEMNITY COMPANY'S
RESPONSES TO CLAIMANT'S
REQUESTS FOR PRODUCTION,
SET TWO**

To:    Claimant Brent Lindsey and his attorneys, Kevin Lipeles, Thomas Schelly and Ralph A. Kottke, Lipeles Law Group, APC, 880 Apollo Street, Suite 336, El Segundo, CA 90245:

Pursuant to California Code of Civil Procedure §§ 2031.010, *et seq.,* Respondent THE TRAVELERS INDEMNITY COMPANY responds to Claimant BRENT LINDSEY's Requests for Production as follows:

### PRELIMINARY STATEMENTS AND GENERAL OBJECTIONS

The following Preliminary Statements and General Objections are generally applicable to all of Claimant's Requests for Production and are incorporated into each of Respondent's Responses to Claimant's Requests for Production:

1.    Respondent's search for information and documentation in connection with Claimant's Requests for Production has been conducted with the necessary degree of diligence to locate responsive information and documents, and discovery is ongoing.  All of the responses contained herein are based only on such information that is presently available to and specifically known to Respondent.

2.    The following responses are given without prejudice to Respondent's right to produce evidence of any subsequently discovered fact or facts that it may later develop. The responses contained herein are made in a good faith effort to supply as much factual information

as is presently known, but should in no way be to the prejudice of the Respondent in relation to further discovery, research, or analysis.

3.      Responses to Claimant's Requests for Production are made without intending to waive or waiving, but, to the contrary, intending to preserve and preserving: (i) all questions as to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose, of any of these Responses or the subject matter thereof, in any subsequent proceeding in this or any other action; (ii) the right to object to the use of any of these Responses or the subject matter thereof in any subsequent proceeding in this or any other action; and (iii) the right to object on any ground at any time to a demand for further Responses to Claimant's Requests for Production or to any other discovery procedures involving or relating to the subject matter of Claimant's Requests for Production.

4.      Respondent objects to the Requests for Production to the extent they seek privilege or confidential information, including information encompassed by the attorney-client privilege, work product doctrine, or to the extent they seek to invade the privacy interests of Respondent and non-parties to this action.

5.      Respondent's inadvertent production of any privileged information is not to be deemed a waiver of any applicable privilege or protection, and Respondent reserves the right to object to the introduction or other use of any privileged material or information that inadvertently may be produced.

6.      Respondent objects to each Request for Production to the extent it seeks information protected by the constitutional, statutory, or common law rights to privacy of any person or entity.

7.      Respondent objects to each Request for Production to the extent that it calls for information containing or constituting proprietary and/or confidential business information.

8.      Respondent objects to the Requests for Production to the extent they seek information equally available to Claimant or already in Claimant's possession, custody, or control.

2

9.      Respondent encourages further discussion between counsel regarding these General Objections and specific objections to the Requests for Production with the expectation and hope that such discussions can lead to further agreement regarding any disputes related to discovery.

Subject to the foregoing general comments and objections, which are incorporated by reference into Claimant's responses to each one of the specific Requests for Production, Claimant provides the following Responses:

## RESPONSES TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 23:** The W-2's of ALL "PROPERTY OUTSIDE CLAIM REPRESENTATIVES in for the year of 2018.

**RESPONSE:** Respondent objects to this Request as overly broad; as seeking information irrelevant to Respondent's claims; as unwarranted annoyance, embarrassment, or oppression, or undue burden and expense; as so remote from the subject matter of this action as not reasonably serving the purpose of pretrial discovery; and as violative of third-parties' rights to privacy.


NILAN JOHNSON LEWIS PA

Dated:  December 2, 2020          By:  */s/ Joel O'Malley*
                                           Joel O'Malley (SBN 262958)
                                           Nicole F. Dailo (SBN 301499)
                                           250 Marquette Avenue South, Suite 800
                                           Minneapolis, MN 55401
                                           Phone:  612-305-7500
                                           Fax:  612-305-7501
                                           jomalley@nilanjohnson.com
                                           ndailo@nilanjohnson.com

                                       ATTORNEYS FOR RESPONDENTS

4842-5070-4312

**AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| Brent Lindsey, an individual, | Case No. 01-19-0004-6106 |
| Claimant, | |
| v. | |
| Travelers Commercial Insurance Company, a Connecticut corporation; Travelers Casualty Insurance Company of America, a Connecticut corporation; The Travelers Indemnity Company; and Peggy Stephens, an individual, | **RESPONDENT THE TRAVELERS INDEMNITY COMPANY'S ANSWERS TO CLAIMANT'S SPECIAL INTERROGATORIES, SET TWO** |
| Respondents. | |

To:  Claimant Brent Lindsey and his attorneys, Kevin Lipeles, Thomas Schelly and Ralph A. Kottke, Lipeles Law Group, APC, 880 Apollo Street, Suite 336, El Segundo, CA 90245:

Pursuant to California Code of Civil Procedure § 2030.010, *et seq.,* Respondent THE TRAVELERS INDEMNITY COMPANY responds to Claimant BRENT LINDSEY's Special Interrogatories as follows:

**PRELIMINARY STATEMENTS AND GENERAL OBJECTIONS**

The following Preliminary Statements and General Objections are generally applicable to all of Claimant's Special Interrogatories and are incorporated into each of Respondent's Answers to Claimant's Special Interrogatories:

1.       Respondent's search for information and documentation in connection with Claimant's Special Interrogatories has been conducted with the necessary degree of diligence to locate responsive information and documents, and discovery is ongoing.  All of the responses contained herein are based only on such information that is presently available to and specifically known to Respondent.

2.       The following responses are given without prejudice to Respondent's right to produce evidence of any subsequently discovered fact or facts that it may later develop. The responses contained herein are made in a good faith effort to supply as much factual information

4842-5070-4312

as is presently known, but should in no way be to the prejudice of the Respondent in relation to further discovery, research, or analysis.

3.      Respondent's Answers to Claimant's Special Interrogatories are made without intending to waive or waiving, but, to the contrary, intending to preserve and preserving: (i) all questions as to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose, of any of these Answers or the subject matter thereof, in any subsequent proceeding in this or any other action; (ii) the right to object to the use of any of these Answers or the subject matter thereof in any subsequent proceeding in this or any other action; and (iii) the right to object on any ground at any time to a demand for further answers to Claimant's Special Interrogatories or to any other discovery procedures involving or relating to the subject matter of Claimant's Special Interrogatories.

4.      Respondent objects to the Special Interrogatories to the extent they seek privilege or confidential information, including information encompassed by the attorney-client privilege, work product doctrine, or to the extent they seek to invade the privacy interests of Respondent and non-parties to this action.

5.      Respondent's inadvertent production of any privileged information is not to be deemed a waiver of any applicable privilege or protection, and Respondent reserves the right to object to the introduction or other use of any privileged material or information that inadvertently may be produced.

6.      Respondent objects to each Special Interrogatory to the extent it seeks information protected by the constitutional, statutory, or common law rights to privacy of any person or entity.

7.      Respondent objects to each Special Interrogatory to the extent that it calls for information containing or constituting proprietary and/or confidential business information.

8.      Respondent objects to the Special Interrogatories to the extent they seek information equally available to Claimant or already in Claimant's possession, custody, or control.

9.      Respondent objects to the Special Interrogatories to the extent they seek information related to or dependent upon a purported INCIDENT, which INCIDENT is undefined

2

by the Interrogatories, and the Complaint is so vague and ambiguous that Respondent has no good faith, reasonable understanding about which INCIDENT these Special Interrogatories seek information.

10.     Respondent encourages further discussion between counsel regarding these General Objections and specific objections to Claimant's Special Interrogatories with the expectation and hope that such discussions can lead to further agreement regarding any disputes related to discovery.

Subject to the foregoing general comments and objections, which are incorporated by reference into Respondent's responses to each one of the specific interrogatories, Respondent provides the following Answers:

## ANSWERS TO SPECIAL INTERROGATORIES

**INTERROGATORY NO. 12:**  State the ANNUAL SALARY of CLAIMANT in for 2019.

For purposes of these interrogatories, the following definition shall apply:

"CLAIMANT" shall mean Claimant Brent Lindsey.

"YOU" or "YOUR" shall mean the person or entity to whom this Special Interrogatory is directed.

"ANNUAL SALARY" shall mean the base gross annual monetary compensation paid to an employee in a year.  It does include overtime.

"PROPERTY OUTSIDE CLAIM REPRESENTATIVE"   shall mean a Defendant representative working in the field in Northern California area investigating and settling property claims against Defendant.

"NORTHERN CALIFORNIA" means Sacramento, San Francisco, Oakland and Modesto areas.

**ANSWER:**  Subject to and without waiving the foregoing objections, Respondent answers that Claimant's 2019 base salary, as shown on Travelers000396, was $83,000.

**INTERROGATORY NO. 13:**   State the ANNUAL SALARY of all PROPERTY OUTSIDE CLAIM REPRESENTATIVES in the Northern California area in 2018.

**ANSWER:**   Respondent objects to this Interrogatory as overly broad; as seeking information irrelevant to Respondent's claims; as unwarranted annoyance, embarrassment, or oppression, or undue burden and expense; as so remote from the subject matter of this action as not reasonably serving the purpose of pretrial discovery; and as violative of third-parties' rights to privacy.

NILAN JOHNSON LEWIS PA

Dated:  December 2, 2020                 By:  */s/ Joel O'Malley*
                                        Joel O'Malley (SBN 262958)
                                        Nicole F. Dailo (SBN 301499)
                                        250 Marquette Avenue South, Suite 800
                                        Minneapolis, MN 55401
                                        Phone:  612-305-7500
                                        Fax:  612-305-7501
                                        jomalley@nilanjohnson.com
                                        ndailo@nilanjohnson.com

ATTORNEYS FOR RESPONDENTS

4

4842-5070-4312

**EXHIBIT R**

1   Kevin A. Lipeles (Bar No. 244 275)
    Thomas H. Schelly (Bar No. 217 285)
2   Ralph A. Kottke (Bar No. 287363)
    LIPELES LAW GROUP, APC
3   880 Apollo Street, Suite 336
    El Segundo, California 90245
4   Telephone: (310) 322-2211
    Fax: (310) 322-2252
5
    Attorneys for Claimant,
6   BRENT LINDSEY

7

8                 **AMERICAN ARBITRATION ASSOCIATION**

9   BRENT LINDSEY, an individual,          **AAA CASE NO. 01-19-0004-6106**

10                                         **NOTICE OF MOTION AND**
            Claimant,                      **MEMOMORANDUM IN SUPPORT OF**
11                                         **MOTION TO COMPEL RESPONSES**
    vs.                                    **TO SPECIAL INTERROGATORIES**
12                                         **(SET TWO ) AND TO REQUEST FOR**
                                           **PRODUCTION OF DOCUMENT (SET**
13  TRAVELERS COMMERCIAL                   **TWO)**
    INSURANCE COMPANY, a Connecticut
14  corporation; TRAVELERS CASUALTY
    INSURANCE COMPANY OF AMERICA,
15  a Connecticut corporation, PEGGY       **The Honorable David Freedman**
    STEPHENS, an individual; and DOES 1
16  through 100, inclusive,                **Date: December 23, 2020**
                                           **Time: 8:30 a.m.**
17          Respondents.                   **Via Video Conference**

18

19
            PROPOUNDING PARTY:        BRENT LINDSEY
20
            RESPONDING PARTY:         TRAVELERS INDEMNITY COMPANY
21
            SET NO.:                  ONE
22

23  TO ALL PARTIES AND THEIR ATTORNEYS:
24
            PLEASE TAKE NOTICE that on December 23, 2020 at 8:30LEASE TAKE NOTICE
25
    that Claimant Brent Lindsey or as soon thereafter as the matter can be heard will move that the
26
    Arbitrator order the response to special interrogatory and the request for production of docu-
27
    ments requested below.
28

                                                                                                    1
    **NOTICE OF MOTIOBN AND MEMORADUM IN SUPPORT OF MOTION TO COMPEL RESPONSES**
    **TO SPECIAL INTERROGATORIES AND REQUESTY FOR PRODUCTION OF DOCUMENTS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF FACTS**

The Claimant Brent Lindsey worked as a Claims Representative for the Respondent from 2011 to his termination in 2019. During this time Respondent discriminated against Mr. Lindsey in pay based on being an African American.

About 2014 he learned he was being underpaid in talking with Caucasian claims representatives [Ex I: Claimant's Responses to Form Interrogatories from Respondent (Set One), page 5, line 20, 27-28 page 6, lines 1-2.] In 2015, upset about his pay, he spoke with Kristen Brimmer. As Loss Coordinator, Ms. Brimmer had access to pay records of all adjusters. She told Mr. Lindsey that he was making about $60,000 while Caucasian employees with no greater experience were making $90,000 to $100,000. [Ex. I: Claimant's Responses to Form Interrogatories (Set One) page 6, lines 5-8]

Mr. Lindsey needs to obtain documentation of Caucasian pay records to further substantiate his claims. Respondent has this data and has a duty to produce it.

**MEMORANADUM**

**WHERE CLAIMANT ALLEGES RACIAL DISCRIMINATION RESULTING LOSS OF INCOME, HE IS ENTITLED TO OBTAIN COMPARATIVE PAY RECORDS TO SUPPORT HIS CASE**

Mr. Lindsey is entitled to discover pay records of his Caucasian counterparts at Respondent's company. According to the California Code of Civil Procedure, "Unless otherwise limited by order of the court in accordance with this title, any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." CCP 2017.010

In his complaint Mr. Lindsey demands compensation for loss of income due to Respondent's racial discrimination against him in pay [Ex I: Claimant's Responses to Form Interrogatories from Respondent (Set One), page 5, line 20, 27-28 page 6, lines 1-2.] To

**NOTICE OF MOTIOBN AND MEMORADUM IN SUPPORT OF MOTION TO COMPEL RESPONSES TO SPECIAL INTERROGATORIES AND REQUESTY FOR PRODUCTION OF DOCUMENTS**

1    support his case, he needs documentation of comparative pay between Caucasians and African
2    Americans. Respondent has that documentation yet has refused to provide it..

3    It is an easy matter for Respondent to provide that information. Mr. Lindsey seeks
4    comparative pay data of the other claims representatives in the Northern California Outside
5    Property Claim Representative Section. There are only about 30 such representatives. (Ex. F:
6    Deposition of David Gosney, page 30. Lines 2 to 7 November 18, 2020). Each employee's
7    salary is recorded in a file called "Workforce Job Summaries." (See Ex G Mr. Lindsey's salary
8    in 2018 produced by Respondent). Respondent undoubtedly has a corresponding record for
9    other claims representatives.

10    Respondent also has files with employee's W-2s. (See Ex. H for Mr. Lindsey's W-2
11    produced by Respondent). Certainly, Caucasian employees'W-2 are similarly filed. The salary
12    data needs to be produced in response to Mr. Lindsey's Special Interrogatory (Set Two) and
13    the W-2s in the Request for Production of Documents Set Two. Respondent may redact third
14    parties' identities where needed.

15    There is no need to clarify which employees are African American and which are not.
16    It is established that there were only two African American claims representatives in the
17    section in 2018. (Deposition of David Gosney, page 33. Lines 13-25 and page 34, line 1
18    November 18, 2020) So it can be safely assumed that all but two records of pay will be for
19    Caucasian or otherwise non-African American.

20    Mr. Lindsey is only seeking the data for one year, 2018. Consequently, Respondent can
21    easily provide this data with a simple access of its computer records for one year in its own
22    local district of Northern California.

23    Claimant Brent Lindsey has met and conferred with Respondent to no avail.

24    Mr. Lindsey thus respectfully requests that Respondent be ordered to answer the
25    requested interrogatory and to produce the requested documents.

26
27
28

3

**NOTICE OF MOTIOBN AND MEMORADUM IN SUPPORT OF MOTION TO COMPEL RESPONSES
TO SPECIAL INTERROGATORIES AND REQUESTY FOR PRODUCTION OF DOCUMENTS**

1

2    Date: December 17, 2020

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIPELES LAW GROUP, APC

By: /S/ Ralph Kottke

Thomas H. Schelly
Ralph A. Kottke
Attorneys for Claimant
Brent Lindsey

4

---

**NOTICE OF MOTIOBN AND MEMORADUM IN SUPPORT OF MOTION TO COMPEL RESPONSES
TO SPECIAL INTERROGATORIES AND REQUESTY FOR PRODUCTION OF DOCUMENTS**

**EXHIBIT S**

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| BRENT LINDSEY, | CASE NO. 01-19-0004-6106 |
| Claimant, | **CASE MANAGEMENT ORDER NO. 5** |
| v. | |
| TRAVELERS COMMERCIAL INSURANCE COMPANY, TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, PEGGY STEPHENS, | |
| Respondents. | |

Based on my ruling granting respondents' motion for summary judgment, the evidentiary hearing set on January 18-22 is cancelled and claimant's discovery motion submitted on December 21 is denied as moot. If a party wants an award issued based on my ruling, please notify me by January 15. If an award is not requested by then, the AAA will proceed to close this matter.

It is so ordered.

Date: January 7, 2021                    /s/ David G. Freedman
                                         Arbitrator

1

**EXHIBIT T**

**AMERICAN ARBITRATION ASSOCIATION**
EMPLOYMENT ARBITRATION TRIBUNAL

| | |
|---|---|
| BRENT LINDSEY, | CASE NO. 01-19-0004-6106 |
|      Claimant, | **RULING ON MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| TRAVELERS COMMERCIAL INSURANCE COMPANY, TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, PEGGY STEPHENS, | |
|      Respondents. | |

Respondents The Travelers Indemnity Company (Travelers) and Peggy Stephens have moved for summary judgment. Claimant Brent Lindsey has opposed the motion. I have considered the parties' written submissions and the oral argument presented on December 23, 2020, and grant the motion for the reasons set forth below.

## I.   CLAIMS

Claimant's arbitration demand includes claims for violations of the Fair Employment and Housing Act, wrongful termination of employment, and retaliation in violation of the Family Medical Leave Act and the California Family Rights Act. The gravamen of his claims are his allegations that he was subjected to a hostile work environment and discrimination due to his race, national origin, and disability; that respondents failed to provide a reasonable accommodation for his disability and to engage in the interactive process; and that he was discharged in violation of public policy.

## II.   GROUNDS FOR MOTION

Peggy Stephens asserts she is entitled to summary judgment because she was claimant's supervisor and not his employer and did not engage in any form of unlawful harassment.

1

Travelers asserts it is entitled to summary judgment because claimant cannot prove he suffered an adverse employment action based on a protected status, suffered any form of unlawful harassment, was denied a reasonable accommodation, or was discharged.

### III.   MATERIAL FACTS PRESENTED BY RESPONDENTS

The evidence submitted in support of respondents' motion consists of excerpts of claimant's deposition testimony and exhibits marked during his examination.[1]   The facts relied upon are listed in a separate statement of material facts.  Claimant submitted a response to the separate statement in which he identifies facts that are disputed and undisputed.  The following is a summary of the material facts both sides say are undisputed, plus facts that are disputed by claimant but for which he cites evidence that does not create a triable issue.

Claimant began working for Travelers in 2011.  During his employment, claimant worked in claims and was promoted from the operations division to the property division in January 2012, and from an Inside Property Adjuster position to an Outside Property Adjuster position in March 2015. Claimant held the latter position until his employment ended in 2019.

Claimant received overall performance ratings of "meets expectations" or "fully meeting expectations" in each performance review he received.  He received salary raises in January 2012, October 2012, March 2015, October 2015, and April 2018.  As a result of the raises, claimant's annual salary increased from $44,000 when he was hired to $80,000 at the time his employment ended.

During his employment, claimant applied but was not selected for the positions of Risk Control Associate, Outside Property CAT, Underwriting Trainee, Property Unit Manager, and Technical Specialist.  Claimant holds the opinion that his race was a reason he did not receive the positions, but he admits he has no facts to show his race was a factor.

Claimant adjusted claims assigned to him by loss coordinators Chris Bremmer and Melissa Copeland.  Neither person took any actions towards claimant based on his race.  Claimant does not recall any jokes or negative statements by any Travelers managers made to him or about him based

---

[1] Travelers submitted additional evidence with its reply brief.  Claimant objected to the evidence and I have not considered it.

2

on his race or national origin.  Claimant also does not recall any managers making negative statements, comments, or jokes to him or in his presence about people with disabilities.

Ms. Stephens became claimant's manager in 2014.  Claimant states that during a one-on-one meeting in February 2014, Ms. Stephens made "unfounded accusations" against him and used body language and a tone of voice that "indicated she did not care," all because of his race. Claimant further states that in February 2014, because of his race, Ms. Stephens embarrassed him in front of colleagues at a meeting by "calling" him out for sleeping when he was not.  Claimant also states Ms. Stephens had a "vendetta" against him because he chose not to socialize or engage in work banter.

On February 28, 2014, claimant emailed HR managers Cheryl Allan and Rosalind Baker to report Ms. Stephens was harassing him.  Allan met with claimant on March 3, 2014.  After the meeting, claimant had no problems with Ms. Stephens for three to six months but states she began harassing him again by not giving him help with his work and not paying him fairly. Stephens also made unspecified comments about the "demographics" of people who lived in "less affluent areas."

David Gosney became claimant's manager in December 2018.  On January 24, 2019, claimant requested a leave of absence from January 28 to April 21, 2019, due to an unspecified health condition.  Travelers granted the request and designated it as FMLA and CFRA leave.  It did not ask claimant to disclose the nature of his health condition.

On April 21, 2019, Travelers sent a letter to claimant stating that as of that date he had "exhausted his job-protected FMLA/CFRA leave" and to contact the company if he had any questions.  The letter did not say that claimant's employment was terminated.  Claimant did not contact the company for clarification of anything in the letter.

Claimant returned to work on April 23, 2019.  He did not request any accommodations on his return.  On April 24, claimant felt Mr. Gosney spoke to him in a "condescending" manner about how Travelers operates and told him to go on the computer and start taking claims.  As a

result, on April 25 he told Mr. Gosney he was resigning from his employment and would work two more weeks.

Claimant gave this testimony about why he resigned: "My initial return to work, first day back to work I did not receive anything. Second day is when this conversation occurred with Mr. Gosney. At that point is when I explained to him that the way they were treating me was not correct, therefore I do not want to deal with this. Therefore I give two weeks notice, and after I gave my two weeks notice is when I was bombarded with claims."

Mr. Gosney asked claimant if he needed anything during his remaining two weeks and claimant did not request any accommodations. Claimant worked on April 26 and was hospitalized on April 27. He did not return to work and his employment ended on May 8, 2019.

On July 23, 2019, claimant filed an administrative complaint with the California Department of Fair Employment and Housing alleging discrimination, harassment, retaliation, wrongful termination, and related claims and obtained an immediate right-to-sue notice.

## IV.    MATERIAL FACTS PRESENTED BY CLAIMANT

Claimant submitted a separate statement in which he identifies facts he contends raise disputed issues of material fact. The supporting evidence he cites is in his 2-page declaration and excerpts of his deposition testimony and interrogatory responses, deposition testimony of Cheryl Allan, Peggy Stephens and David Gosney, the declaration of Abie Kamara, and various documents.[2] The following is a summary of the facts for which claimant has provided evidentiary support in addition to the undisputed facts summarized above.

Ms. Stephens became claimant's Field Property Lead Manager on or about 2014. She is Anglo-American or white and talked to claimant in an unspecified way that showed she considered him inferior due to his race. Once in a meeting of thirty to forty people, Ms. Stephens yelled across the room to claimant, "You are sleeping." Claimant was not sleeping and was humiliated.

When an outside position opened in 2015, Ms. Stephens did not offer claimant the job he

---

[2] The Kamara declaration states she worked at Travelers from 2011 to 2015 and purports to describe events involving her supervisor at unspecified times. The declaration consists of statements and unsupported conclusions about things that are not relevant to the claims in this case and is insufficient to raise any triable issues of material fact.

4

wanted Sacramento near his home. She directed that he be assigned to the Bay Area, which required that he move.

Ms. Stephens continued to be an executive until the end of claimant's employment. She did not contact claimant during his 2019 medical leave and did not contact him after he said he was resigning.

Claimant's declaration states his conclusion that he was "qualified" for various positions he applied for during his employment and did not receive due to his race. Claimant's opposition does not include any evidence that corroborates or supports this conclusion.

Claimant never wanted to leave Travelers and intended to stay with the company when his leave ended in April 2019. When claimant announced his resignation, Mr. Gosney made no effort to find out what was wrong and do an interactive process or provide an accommodation.

V.      **ANALYSIS**

     A.      **Summary Judgment Standard**

Section 13 of the parties' arbitration agreement states: "The parties have the right to file pre-hearing motions, including dispositive motions (e.g., dismissal or summary judgment), in a form consistent with the Federal Rules of Civil Procedure. The arbitrator shall consider and rule on such motions in advance of the commencement of the arbitration hearing, and such consideration and ruling shall be consistent with the standards set forth in the Federal Rules of Civil Procedure."

A motion for summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250. The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.

5

*Celotex*, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the nonmoving party's case. *Id.*; *Horphag Research Ltd. v. Garcia* (9th Cir. 2007) 475 F.3d 1029, 1035.

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252. A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### B.   Claims for Unlawful Discrimination

Claimant's first and second causes of action allege unlawful discrimination based on race, national origin, and disability by Travelers.[3]  To establish these FEHA claims, claimant must prove that Travelers discharged or subjected him to another adverse employment action and that his race, national origin, or disability were substantial motivating reasons for the discharge or adverse employment action. (CACI No. 2500; Judicial Council of California Civil Jury Instructions (2019 edition.))

There is an adverse employment action if an employer has taken an action that "taken as a whole, materially and adversely affected the terms, conditions, or privileges of" an employee's employment.  A "substantial motivating reason" is a reason that actually contributed to the discharge or adverse employment action.  (CACI No. 2507.)

In his first cause of action for disability discrimination, claimant alleges that Travelers terminated his employment due to his physical disability.  It is apparent that claimant bases this on the theory of constructive discharge.

---

[3] Every claim is claimant's complaint is alleged against Travelers and Ms. Stephens.  During the hearing of the motion, claimant's counsel stated that claimant is not pursuing any claims against Ms. Stephens except the claim for unlawful harassment.

To establish constructive discharge, claimant must prove that respondent, through its officers, directors, managing agents, or supervisory employees "intentionally created or knowingly permitted working conditions to exist that were so intolerable that a reasonable person in [claimant's] position would have had no reasonable alternative except to resign. In order to be sufficiently intolerable, adverse working conditions must be unusually aggravated or amount to a continuous pattern. In general, single, trivial, or isolated acts of misconduct are insufficient to support a constructive discharge claim." (CACI No. 2510; Judicial Council of California Civil Jury Instructions (2019 edition.))

Claimant's opposition argues that he was constructively discharged because Traveler's sent the April 21 letter telling him his leave was no longer job-protected and he reasonably interpreted the letter to mean he could be terminated immediately unless he showed up for work. He further argues that when he returned to work Mr. Gosney spoke to him condescendingly when instructing him on company procedures, only made perfunctory inquiries about how he was doing, and loaded him with work, and these things caused stress and made him resign.

As noted above, the facts show claimant requested and was granted a leave until April 21. The April 21 letter stated that as of that date he had "exhausted his job-protected FMLA/CFRA leave" and to contact the company if he had any questions. Claimant has not cited anything in the letter that was factually or legally incorrect. The letter did not say that claimant's employment was terminated or include any statements that threatened termination. Claimant did not contact the company for clarification of anything in the letter. Claimant testified that he was given no work on his first day back and was he was "bombarded with claims" after he submitted his resignation on his second day back.

These facts fail to show that Travelers intentionally created conditions so intolerable that a reasonable person in claimant's position would have had no reasonable alternative except to resign. There is nothing in the April 21 letter that would have caused a reasonable person to believe he had no alternative except to resign. In fact, claimant must not have had that belief because he did not resign when he received the letter; he returned to work. Thus, the letter did not

force him to resign and no reasonable employee could have felt forced to resign due to the contents of the letter. The facts also show that claimant did not resign because he was "bombarded with claims." He testified that happened after he submitted his resignation, not before.

Claimant's testimony describes nothing about the behavior of Mr. Gosney in April 2019 that a reasonable person would have considered intolerable. The statements claimant found condescending were isolated, not aggravated, and not part of a continuous pattern.

Accordingly, I do not find there is any evidence to support a discrimination claim based on the adverse action of the termination of claimant's employment. Claimant has failed to meet his burden to show that there is a genuine issue of material fact as to that issue.

In his second cause of action for race and national origin discrimination, claimant does not allege a specific adverse action, but I assume he contends that he suffered an adverse action when he was not selected after he applied for new positions, which is specifically alleged in his ninth cause of action, in addition to being constructively discharged.

Claimant's evidence shows he applied but was not selected for several positions during his employment. He testified that his race was the reason he did not receive the positions, but he admits he has no facts to show his race was a factor. He also has not submitted any evidence that describes his qualifications for any position he sought, identifies the person or persons who made the decision not to grant his applications, or describes any facts to support his conclusion or prove that his race was a factor.

An employee's subjective beliefs in an employment discrimination case do not create a genuine issue of fact. He must provide evidence relating to the challenged adverse action and the motivation of the decision makers and prove a causal link between a prohibited motivation and the adverse action. (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1159.) Claimant has failed to do so.

### C. Claims for Unlawful Harassment

Claimant's third and fourth causes of action allege unlawful harassment based on race, national origin and disability by Travelers and Ms. Stephens. He specifically alleges that Ms.

8

Stephens created a hostile work environment by humiliating him in meetings and by making frivolous accusations due to his race.

To establish these FEHA claims, claimant must prove that he was subjected to unwanted harassing conduct due to his race, national origin, or disability, that the harassing conduct was severe or pervasive, and that a reasonable person in claimant's circumstances would have considered the work environment to be hostile or abusive. (CACI No. 2521A.) "Severe or pervasive" means conduct that alters the conditions of employment and creates as hostile or abusive environment. Factors to be considered include the nature of the conduct, how often and over what period it occurred, and the extent to which it unreasonably interfered with an employee's work performance. (CACI No. 2524.)

Unlawful harassment includes verbal harassment such as "epithets, derogatory comments or slurs on a basis" prohibited by the FEHA. (Cal. Code Regs., tit. 2, § 11019(b)(2). However, harassment that is occasional, isolated, or sporadic is insufficient. Claimant must show harassment of a repeated, routine or generalized nature, especially when the harassing conduct is not severe. (*Lyle v. Warner Bros. Television Productions* (2006) 38 Cal.4th 264, 283-285; *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 130-131.)

Claimant's testimony shows that Ms. Stevens talked to him in an unspecified way on unspecified days that showed she considered him inferior due to his race, in 2014 humiliated him in a meeting of thirty to forty people by yelling that he was sleeping, in 2015 did not offer him a job he wanted in Sacramento, and on unspecified dates made unspecified comments about the "demographics" of people who lived in "less affluent areas." This evidence does not raise a triable issue of fact regarding unlawful harassment.

Claimant's testimony does not describe facts that show Ms. Stephens said or did anything towards claimant because of his race or motivated by racial bias. Claimant's subjective belief that she considered him inferior due to his race is not sufficient to prove harassing conduct due to his race. More is required. Even if hostility towards claimant due to his race was the reason for Ms. Stephens' conduct, the conduct claimant describes does not include evidence of racial epithets,

racially derogatory comments, or racial slurs.  It was not severe or pervasive unlawful harassment in any sense and he has presented no evidence to support a finding that it altered the conditions of employment and created a hostile or abusive environment.

## D.   Claim for Failure to Accommodate

Claimant's fifth cause of action alleges a claim for failure to reasonably accommodate a disability. To establish this FEHA claim, claimant must prove that he had a condition that limited a major life activity, that he was able to perform his essential job duties with reasonable accommodation for his condition, that respondent failed to provide reasonable accommodation for his physical condition, and that failure to provide reasonable accommodation was a substantial factor in causing harm. (CACI No. 2541.)  Reasonable accommodation under means "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." (*Nadaf-Rahrov v. Neiman Marcus Grp., Inc.* (2008) 166 Cal.App. 4th 952, 974.)

Claimant's complaint alleges that in April 2019 he "requested that Defendants make a reasonable accommodation for his physical disability so that he would be able to perform the essential job requirements" and that respondent "refused said accommodation and refused to discuss any other potential reasonable accommodation it might afford" to him.

Claimant has presented no evidence describing his physical disability or the form of reasonable accommodation recognized under the FEHA that he required to perform his essential job duties when he returned to work in April 2019 and his testimony disproves the allegation that he requested an accommodation that respondent failed to provide. When asked in deposition if he requested any accommodations to perform his job when he returned to work in April 2019, claimant gave these answers: "I did not ask for my accommodations when I returned to work at that time" and "I did not ask for any accommodations." This unequivocal testimony defeats his claim that respondent failed to reasonably accommodate a disability he had.

10

### E.   Claim for Failure to Engage in Interactive Process

Claimant's sixth cause of action alleges that respondent to engage in a good faith interactive process. To establish this FEHA claim, claimant must prove that he had a physical condition known to respondent, that he requested that respondent make reasonable accommodation for his physical condition, that he was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that she would be able to perform the essential job requirements, and that respondent failed to participate in a timely good-faith interactive process with him to determine whether reasonable accommodation could be made (CACI No. 2546.)

"Two principles underlie a cause of action for failure to provide a reasonable accommodation. First, the employee must request an accommodation. Second, the parties must engage in an interactive process regarding the requested accommodation and, if the process fails, responsibility for the failure rests with the party who failed to participate in good faith." (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 54, internal citations omitted.)

When asked if he requested any accommodations to perform his job when he returned to work in April 2019, claimant gave these answers in his deposition: "I did not ask for my accommodations when I returned to work at that time" and "I did not ask for any accommodations." This testimony defeats his claim that respondent failed to engage in a good faith interactive process. The duty to do so never arose because claimant never requested an accommodation.

### F.   Claim for Retaliation

Claimant's seventh cause of action alleges unlawful retaliation. To establish this FEHA claim, claimant must prove that he engaged in a form of protected activity, that respondent discharged or subjected him to another adverse employment action, and that his protected activity was a substantial motivating reason for the discharge or adverse employment action. (CACI No. 2505.)

Claimant's complaint alleges that his disability, race, and national origin "were the

11

reasons" respondent retaliated against him.  The complaint does not allege he suffered retaliation for engaging in any form of protected activity and he has not presented evidence that raises a disputed issue of fact on that issue.

Claimant's retaliation claim fails because he has not alleged, and his evidence does not show, he engaged in any protected activity that motivated any adverse employment actions taken against him.

### G.   Claim for Failure to Prevent Retaliation

Claimant's eighth cause of action alleges a failure to prevent unlawful retaliation. Claimant cannot prevail on this claim because his retaliation fails. (*Dickson v. Burke Williams, Inc.* (2015) 234 Cal.App.4th 1307, 1314.)

### H.   Claim for Failure to Promote

Claimant's ninth cause of action alleges he was denied promotions and raises due to his race and national origin.  As with his discrimination claims, to establish this FEHA claim, claimant must prove that respondent denied him a promotion or raise and that his race or national origin were substantial motivating reasons for those decisions.

As discussed above, claimant's evidence shows he applied but was not selected for several positions during his employment.  His evidence does not describe his qualifications for any position he sought, does not identify the person or persons who made the decision not to grant his applications, and does not describe any facts to support his allegation that his race was a factor. He admits he has no facts to show his race was a factor and rests on his uncorroborated opinion that his race was a reason he did not receive the positions.  Claimant's subjective belief that his race was a reason he was not selected is insufficient to raise a triable issue.

Claimant's salary was raised in January 2012, October 2012, March 2015, October 2015, and April 2018.  His complaint does not allege and his evidence does not describe a time when he should have received a raise but did not or show any facts to support his allegation that race was ever a factor in his compensation.  Claimant's subjective belief that his race was a reason he did not receive a raise is insufficient to raise a triable issue.

12

I find claimant had not shown that there is a genuine issue of material fact concerning the discrimination alleged in his ninth cause of action.

### I.   Claim for Wrongful Termination

Claimant's tenth cause of action alleges that respondent constructively terminated his employment in violation of public policy. This claim fails because, as discussed above, the facts presented do not establish that respondent intentionally created or knowingly permitted intolerable conditions that forced claimant to resign.

### J.   Interference with FMLA and CFRA Leave

Claimant's eleventh cause of action alleges respondent violated the FMLA and CFRA by terminating his employment "on April 21, 2019, while he was FMLA/CFRA leave." This claim fails because, as discussed above, the evidence shows that respondent did not terminate claimant's employment. The facts presented do not establish that respondent intentionally created or knowingly permitted intolerable conditions that forced claimant to resign.

### VI.   CONCLUSION

Respondents have met their burden by showing that there is an absence of evidence supporting claimant's case and that they are entitled to an award in their favor as a matter of law. Claimant has not met his burden to make an affirmative showing of facts as to those issues for which he has the burden of proof at trial. Therefore, the motion for summary judgment is granted.

Date:  December 29, 2020

David G. Freedman
Arbitrator

13

**EXHIBIT U**

*TRAVELERS*

**Statement of Intent**

Travelers values each of its employees and looks forward to good relations with, and among, all of its employees. Occasionally, however, disagreements may arise between an individual employee and the Company, or between one employee and another in a context that involves the Company. The Company believes that the resolution of such disagreements will be best accomplished by voluntary pre-arbitration steps in the Internal Dispute Resolution Policy ("IDR"), and, where resolution is not achieved for any reason, by mandatory arbitration conducted under the auspices of the American Arbitration Association (AAA). For these reasons, the Company has adopted this Arbitration Policy ("the policy"). This policy is a binding contract that applies to Travelers and all persons employed by Travelers, including all affiliate and subsidiary companies (collectively, "the Company").

This policy does not constitute a guarantee that employment will continue for any specified period of time or end only under certain conditions. Employment with the Company is a voluntary relationship for no definite period of time and nothing in this policy or any other Company document constitutes an express or implied contract of continuing employment for any definite period of time. This policy does not constitute, nor should it be construed to constitute, a waiver by the Company or an employee of their respective rights under the "employment at will" doctrine. However, this policy is a contract binding both the employee and the Company regarding the formal resolution of disputes in arbitration. **All disputes covered by this policy will be decided by an arbitrator through arbitration and not by way of court or jury trial.**

**Scope of the Policy**

Except as it otherwise provides, this policy makes arbitration the required and exclusive forum for the resolution of all past, present and future employment-related disputes based on legally protected rights (i.e., statutory, contractual or common law rights) that may arise by the Company against an employee and between an employee or former employee and the Company or its current and former parents, subsidiaries and affiliates and its and their current and former officers, directors, employees and agents (and that are not resolved by the voluntary internal dispute resolution procedure), including without limitation contractual claims and claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Worker Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Fair Credit Reporting Act, the Equal Pay Act of 1963, the Pregnancy Discrimination Act, Genetic Information Nondiscrimination Act, the Worker Adjustment and Retraining Notification Act, the Affordable Care Act, each as amended, and any other federal, state or local statute, regulation or common law doctrine regarding employment discrimination, retaliation, whistle blowing, conditions of employment or termination of employment. This policy is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq.

The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of the agreement represented by this policy, including, but not limited to any claim that all or any part of this policy is void or voidable. However, as stated in the "Class and Representative Actions Waivers" section below, the preceding sentence will not apply to the Class Action Waiver and/or Representative Action Waiver.

Unless otherwise stated herein, the only legal disputes not covered by the policy are claims that an employee or former employee may have regarding:

  i.    Workers' compensation benefits;
  ii.   Unemployment compensation benefits;

  iii.  Benefit claims subject to the Employee Retirement Income Security Act of 1974 and all amendments thereto;
  iv.   Representative claims under California's Private Attorney General Act, unless and until applicable law allows for enforcement of Private Attorney General waivers in arbitration agreements governed by the Federal Arbitration

TRAVELERS

v.     Act;

v.     Disputes that may not be subject to pre-dispute arbitration as expressly provided by Dodd- Frank Wall Street Reform and Consumer Protection Act or other controlling federal statutes or applicable and enforceable federal executive orders; and

vi.     Any other claims that cannot be arbitrated as a matter of law.

Nothing in this policy shall prevent either party from seeking injunctive relief from any court of competent jurisdiction in aid of arbitration or on the grounds that the award to which the applicant for such relief may be entitled may be rendered ineffectual without such relief, such as provisional injunctive relief intended to redress a violation of a covenant, including but not limited to, covenants with respect to intellectual property, confidentiality/non-disclosure, non-solicitation and non- competition. A party's seeking or obtaining such relief shall not be considered a waiver of that party's right to arbitration under this policy. Nothing in this policy prevents employee from making a report to or filing a claim or charge with a government agency, including without limitation the Equal Employment Opportunity Commission, U.S. Department of Labor, U.S. Securities and Exchange Commission, National Labor Relations Board, or Office of Federal Contract Compliance Programs. Nothing in this policy prevents the investigation by a government agency of any report, claim or charge otherwise covered by this policy. This policy also does not prevent federal administrative agencies from adjudicating claims and awarding remedies based on those claims, even if the claims would otherwise be covered by this policy. To the extent an employee or former employee initiates such complaint, claim or action, either before or after demanding arbitration, the arbitration will be stayed until the conclusion of the agency process to avoid duplicate proceedings. Nothing in this policy prevents or excuses a party from satisfying any conditions precedent and/or exhausting administrative remedies under applicable law before bringing a claim in arbitration. The Company will not retaliate against employee for filing a claim with an administrative agency or for exercising rights (individually or in concert with others) under Section 7 of the National Labor Relations Act.

This policy does not require that the Company institute arbitration or follow the steps of the Internal Dispute Resolution policy before taking disciplinary action of any kind, including termination. However, if an employee disagrees with any such disciplinary action and believes that such action violated his/her legally protected rights, he/she may institute proceedings in accordance with the Company's Internal Dispute Resolution policy. If for any reason resolution is not achieved through these informal means, covered claims not otherwise excluded from mandatory arbitration will be resolved through final and binding arbitration pursuant to this arbitration policy. Nothing in this provision shall be construed to negate the mutuality of this agreement to arbitrate, and the Company explicitly agrees to arbitrate, pursuant to this policy, any disputed disciplinary action after it has been taken. The results of the arbitration process are final and binding on all parties.

**Confidentiality**
The Company and employee agree to maintain the confidentiality of the arbitration, except: (i) to the extent agreed upon otherwise, (ii) as may be otherwise appropriate in response to a governmental agency or legal process, or (iii) as is necessary to enforce, correct, modify or vacate the arbitrator's award.

**Arbitration Rules and Procedures**
The arbitration will be held under the auspices of the AAA, and except as provided in this policy, will be under the then current Employment Arbitration Rules of the AAA ("AAA Rules") (the AAA Rules are available through the via the internet at

**1. Initiation of Arbitration Proceeding**
The Company and employee agree that the aggrieved party must make a written request for arbitration of any claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that the applicable state or federal law prescribes for the claim. However, if employee or the Company utilize the voluntary pre-arbitration steps in the Travelers Internal Dispute Resolution Policy, the statute of limitation is tolled during the course of those processes. In other words, if those processes are initiated, the deadline for the filing of claims proceeding in the IDR process, is extended by the length of time it takes for those voluntary pre- arbitration processes to be conducted. Any written request for arbitration to the Company will be made to the Executive Vice President, General Counsel by U.S. Mail or hand delivery. A telephone call does not constitute notice for purposes of initiating an arbitration demand. Employee will be given any written request for arbitration at the last home address employee provided in writing to Company. The request for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. The Arbitrator will resolve all disputes regarding whether the demand for arbitration was proper and on time.

**2. Appointment of Neutral Arbitrator**

2

*TRAVELERS*

The AAA shall appoint one neutral, arbitrator from its Employment Dispute Resolution Roster pursuant to the selection process described below. It is the intent of the parties that the prospective arbitrators are neutral, experienced, knowledgeable with respect to employment related claims, and duly qualified to serve as an arbitrator under the AAA's Rules. The arbitrator shall be selected in the following manner:

a) immediately after the filing of the demand, the AAA shall submit to each party an identical list of at least 10 proposed arbitrators;
b) each party shall then have 10 business days from the mailing date of the list to cross off up to three of the names, number the remaining names in order of preference and return the list to the AAA, or alternatively, each party shall have the right to request, no more than once in each case, that the AAA provide a different or expanded list of proposed arbitrators, which new list shall then be treated as stated above;
c) if a party does not return the list within the time specified, all persons on the list shall be deemed acceptable to that party; and
d) the AAA shall invite the acceptance of the arbitrators remaining on the list in the order of preference specified by the parties to the extent the order can be reconciled by the AAA.

In the event the parties fail to agree on any of the persons named, or if an acceptable arbitrator is unwilling to act, the AAA shall issue additional lists. In the event of an impasse in the selection of an arbitrator after one additional list has been provided, the AAA shall furnish an additional list of eleven (11) arbitrators from which the parties shall strike alternately, with the party striking first to be determined by a coin toss, until only one name remains. That person shall be designated as the Arbitrator.

**3. Qualifications of Neutral Arbitrator**
Unless the parties jointly agree otherwise, the arbitrator shall be either an attorney who is experienced in employment law and licensed to practice law in the state in which the arbitration is convened or a retired judge from any jurisdiction.

**4. Proceedings**
The hearing shall be conducted by the arbitrator in whatever manner will most expeditiously permit and allow the parties to develop their respective claims and defenses and full presentation of evidence and arguments of the parties. After consultation with the parties, the arbitrator shall set the date, time and place of the hearing, notice of which must be given to the parties by the AAA at least 30 calendar days in advance unless the parties agree otherwise. In the event the hearing cannot be completed in one day, the arbitrator will schedule the hearing to be continued on a mutually convenient date.

**5. Representation**
Any party may be represented by an attorney or by himself/herself.

**6. Confidentiality of and Attendance at Hearing**
The arbitrator shall maintain the confidentiality of the hearings unless the law provides to the contrary, as determined by the arbitrator. The arbitrator shall have the authority to exclude witnesses, other than a party, from the hearing during the testimony of any other witness. The arbitrator shall also have the authority to decide whether any person who is not a witness may attend the hearing.

**7. Postponement**
The arbitrator, for good cause shown, may postpone any hearing upon the request of a party or upon the arbitrator's own initiative, and shall also grant such postponement when all of the parties agree thereto.

**8. Oaths**
The arbitrator may require a witness to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

**9. Stenographic Record**
There shall be no stenographic record of these proceedings unless either party requests it. In the event a party requests a stenographic record, that party shall bear the cost of such a record. The arbitrator will resolve any disputes regarding apportionment of costs of the stenographic record.

**10. Arbitration in the Absence of a Party**

**EXHIBIT V**

# Employment

Arbitration Rules and Mediation Procedures



AMERICAN ARBITRATION ASSOCIATION®

Available online at adr.org/employment

Rules Amended and Effective November 1, 2009
Introduction Revised October 1, 2017

**xiii.** the specification of undisclosed claims;

**xiv.** the extent to which documentary evidence may be submitted at the hearing;

**xv.** the extent to which testimony may be admitted at the hearing telephonically, over the internet, by written or video-taped deposition, by affidavit, or by any other means;

**xvi.** any disputes over the AAA's determination regarding whether the dispute arose from an individually-negotiated employment agreement or contract, or from an employer plan (see Costs of Arbitration section).

The arbitrator shall issue oral or written orders reflecting his or her decisions on the above matters and may conduct additional conferences when the need arises.

There is no AAA administrative fee for an Arbitration Management Conference.

9. Discovery

The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.

The AAA does not require notice of discovery related matters and communications unless a dispute arises. At that time, the parties should notify the AAA of the dispute so that it may be presented to the arbitrator for determination.

10. Fixing of Locale (the city, county, state, territory, and/or country of the Arbitration)

If the parties disagree as to the locale, the AAA may initially determine the place of arbitration, subject to the power of the arbitrator(s), after their appointment to make a final determination on the locale. All such determinations shall be made having regard for the contentions of the parties and the circumstances of the arbitration.

11. Date, Time and Place (the physical site of the hearing within the designated locale) of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 days in advance of the hearing date, unless otherwise agreed by the parties.

**EXHIBIT W**

**AMERICAN ARBITRATION ASSOCIATION**
EMPLOYMENT ARBITRATION TRIBUNAL

| | |
|---|---|
| BRENT LINDSEY, | CASE NO. 01-19-0004-6106 |
| Claimant, | **FINAL AWARD** |
| v. | |
| TRAVELERS COMMERCIAL INSURANCE COMPANY, TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, PEGGY STEPHENS, | |
| Respondents. | |

Arbitrator:        David G. Freedman
                 1999 Avenue of the Stars, Suite 1100
                 Los Angeles, California 90067

Appearances:

      For Claimant:      Ralph A. Kottke
                        Thomas H. Schelly
                        Lipeles Law Group, APC
                        880 Apollo Street, Suite 336
                        El Segundo, California 90245


      For Respondents:   Nicole F. Dailo
                        Joel O'Malley
                        Nilan Johnson Lewis PA
                        120 South Sixth Street, Suite 400
                        Minneapolis, Minnesota 55402

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the agreement entered by the above-named parties, and having been duly sworn and having duly heard the proofs and allegations of the parties, AWARD as follows:

On December 23, 2020, I heard the summary judgment motion made by respondents The Travelers Indemnity Company and Peggy Stephens.[1] After considering the written submissions and oral arguments of the parties, I found that respondents met their burden of showing that there is no genuine dispute as to any material fact and they are entitled to an award in their favor as a matter of law and that claimant did not met his burden to present specific facts showing that there is a genuine issue for trial. I issued a ruling dated December 29, 2020, granting the motion. Thereafter, respondent made a written motion for attorney's fees. I read and considered the papers submitted in support and opposition to the motion and the argument presented at a hearing on February 18, 2021, and issued a ruling denying the motion. I now make this Final Award.

## AWARD

The claims of Brent Lindsay are denied.

The administrative fees and expenses of the American Arbitration Association totaling $2,950.00 and the compensation of the arbitrator totaling $15,736.50 shall be borne as incurred.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

Date: March 3, 2021

David G. Freedman
Arbitrator

---

[1] Claimant dismissed Travelers Commercial Insurance Company and Travelers Casualty Insurance Company of America from this arbitration on May 12, 2020. The Travelers Indemnity Company was added as a respondent on April 6, 2020.

**AMERICAN ARBITRATION ASSOCIATION**
EMPLOYMENT ARBITRATION TRIBUNAL

BRENT LINDSEY,

          Claimant,

v.

TRAVELERS COMMERCIAL INSURANCE
COMPANY, TRAVELERS CASUALTY
INSURANCE COMPANY OF AMERICA,
PEGGY STEPHENS,

          Respondents.

CASE NO. 01-19-0004-6106

**RULING ON MOTION FOR
SUMMARY JUDGMENT**

---

Respondents The Travelers Indemnity Company (Travelers) and Peggy Stephens have moved for summary judgment. Claimant Brent Lindsey has opposed the motion. I have considered the parties' written submissions and the oral argument presented on December 23, 2020, and grant the motion for the reasons set forth below.

### I.   CLAIMS

Claimant's arbitration demand includes claims for violations of the Fair Employment and Housing Act, wrongful termination of employment, and retaliation in violation of the Family Medical Leave Act and the California Family Rights Act. The gravamen of his claims are his allegations that he was subjected to a hostile work environment and discrimination due to his race, national origin, and disability; that respondents failed to provide a reasonable accommodation for his disability and to engage in the interactive process; and that he was discharged in violation of public policy.

### II.   GROUNDS FOR MOTION

Peggy Stephens asserts she is entitled to summary judgment because she was claimant's supervisor and not his employer and did not engage in any form of unlawful harassment.

Travelers asserts it is entitled to summary judgment because claimant cannot prove he suffered an adverse employment action based on a protected status, suffered any form of unlawful harassment, was denied a reasonable accommodation, or was discharged.

### III.   MATERIAL FACTS PRESENTED BY RESPONDENTS

The evidence submitted in support of respondents' motion consists of excerpts of claimant's deposition testimony and exhibits marked during his examination.[1]  The facts relied upon are listed in a separate statement of material facts.  Claimant submitted a response to the separate statement in which he identifies facts that are disputed and undisputed.  The following is a summary of the material facts both sides say are undisputed, plus facts that are disputed by claimant but for which he cites evidence that does not create a triable issue.

Claimant began working for Travelers in 2011.  During his employment, claimant worked in claims and was promoted from the operations division to the property division in January 2012, and from an Inside Property Adjuster position to an Outside Property Adjuster position in March 2015. Claimant held the latter position until his employment ended in 2019.

Claimant received overall performance ratings of "meets expectations" or "fully meeting expectations" in each performance review he received.  He received salary raises in January 2012, October 2012, March 2015, October 2015, and April 2018.  As a result of the raises, claimant's annual salary increased from $44,000 when he was hired to $80,000 at the time his employment ended.

During his employment, claimant applied but was not selected for the positions of Risk Control Associate, Outside Property CAT, Underwriting Trainee, Property Unit Manager, and Technical Specialist.  Claimant holds the opinion that his race was a reason he did not receive the positions, but he admits he has no facts to show his race was a factor.

Claimant adjusted claims assigned to him by loss coordinators Chris Bremmer and Melissa Copeland.  Neither person took any actions towards claimant based on his race.  Claimant does not recall any jokes or negative statements by any Travelers managers made to him or about him based

---

[1] Travelers submitted additional evidence with its reply brief.  Claimant objected to the evidence and I have not considered it.

on his race or national origin.  Claimant also does not recall any managers making negative statements, comments, or jokes to him or in his presence about people with disabilities.

Ms. Stephens became claimant's manager in 2014.  Claimant states that during a one-on-one meeting in February 2014, Ms. Stephens made "unfounded accusations" against him and used body language and a tone of voice that "indicated she did not care," all because of his race.  Claimant further states that in February 2014, because of his race, Ms. Stephens embarrassed him in front of colleagues at a meeting by "calling" him out for sleeping when he was not.  Claimant also states Ms. Stephens had a "vendetta" against him because he chose not to socialize or engage in work banter.

On February 28, 2014, claimant emailed HR managers Cheryl Allan and Rosalind Baker to report Ms. Stephens was harassing him.  Allan met with claimant on March 3, 2014.  After the meeting, claimant had no problems with Ms. Stephens for three to six months but states she began harassing him again by not giving him help with his work and not paying him fairly. Stephens also made unspecified comments about the "demographics" of people who lived in "less affluent areas."

David Gosney became claimant's manager in December 2018.  On January 24, 2019, claimant requested a leave of absence from January 28 to April 21, 2019, due to an unspecified health condition.  Travelers granted the request and designated it as FMLA and CFRA leave.  It did not ask claimant to disclose the nature of his health condition.

On April 21, 2019, Travelers sent a letter to claimant stating that as of that date he had "exhausted his job-protected FMLA/CFRA leave" and to contact the company if he had any questions.  The letter did not say that claimant's employment was terminated.  Claimant did not contact the company for clarification of anything in the letter.

Claimant returned to work on April 23, 2019.  He did not request any accommodations on his return.  On April 24, claimant felt Mr. Gosney spoke to him in a "condescending" manner about how Travelers operates and told him to go on the computer and start taking claims.  As a

result, on April 25 he told Mr. Gosney he was resigning from his employment and would work two more weeks.

Claimant gave this testimony about why he resigned: "My initial return to work, first day back to work I did not receive anything. Second day is when this conversation occurred with Mr. Gosney. At that point is when I explained to him that the way they were treating me was not correct, therefore I do not want to deal with this. Therefore I give two weeks notice, and after I gave my two weeks notice is when I was bombarded with claims."

Mr. Gosney asked claimant if he needed anything during his remaining two weeks and claimant did not request any accommodations. Claimant worked on April 26 and was hospitalized on April 27. He did not return to work and his employment ended on May 8, 2019.

On July 23, 2019, claimant filed an administrative complaint with the California Department of Fair Employment and Housing alleging discrimination, harassment, retaliation, wrongful termination, and related claims and obtained an immediate right-to-sue notice.

## IV.   MATERIAL FACTS PRESENTED BY CLAIMANT

Claimant submitted a separate statement in which he identifies facts he contends raise disputed issues of material fact. The supporting evidence he cites is in his 2-page declaration and excerpts of his deposition testimony and interrogatory responses, deposition testimony of Cheryl Allan, Peggy Stephens and David Gosney, the declaration of Abie Kamara, and various documents.[2] The following is a summary of the facts for which claimant has provided evidentiary support in addition to the undisputed facts summarized above.

Ms. Stephens became claimant's Field Property Lead Manager on or about 2014. She is Anglo-American or white and talked to claimant in an unspecified way that showed she considered him inferior due to his race. Once in a meeting of thirty to forty people, Ms. Stephens yelled across the room to claimant, "You are sleeping." Claimant was not sleeping and was humiliated.

When an outside position opened in 2015, Ms. Stephens did not offer claimant the job he

---

[2] The Kamara declaration states she worked at Travelers from 2011 to 2015 and purports to describe events involving her supervisor at unspecified times. The declaration consists of statements and unsupported conclusions about things that are not relevant to the claims in this case and is insufficient to raise any triable issues of material fact.

wanted Sacramento near his home. She directed that he be assigned to the Bay Area, which required that he move.

Ms. Stephens continued to be an executive until the end of claimant's employment. She did not contact claimant during his 2019 medical leave and did not contact him after he said he was resigning.

Claimant's declaration states his conclusion that he was "qualified" for various positions he applied for during his employment and did not receive due to his race. Claimant's opposition does not include any evidence that corroborates or supports this conclusion.

Claimant never wanted to leave Travelers and intended to stay with the company when his leave ended in April 2019. When claimant announced his resignation, Mr. Gosney made no effort to find out what was wrong and do an interactive process or provide an accommodation.

## V.   ANALYSIS

### A.   Summary Judgment Standard

Section 13 of the parties' arbitration agreement states: "The parties have the right to file pre-hearing motions, including dispositive motions (e.g., dismissal or summary judgment), in a form consistent with the Federal Rules of Civil Procedure. The arbitrator shall consider and rule on such motions in advance of the commencement of the arbitration hearing, and such consideration and ruling shall be consistent with the standards set forth in the Federal Rules of Civil Procedure."

A motion for summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250. The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.

5

*Celotex*, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the nonmoving party's case. *Id.*; *Horphag Research Ltd. v. Garcia* (9th Cir. 2007) 475 F.3d 1029, 1035.

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 252. A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### B.     Claims for Unlawful Discrimination

Claimant's first and second causes of action allege unlawful discrimination based on race, national origin, and disability by Travelers.[3]  To establish these FEHA claims, claimant must prove that Travelers discharged or subjected him to another adverse employment action and that his race, national origin, or disability were substantial motivating reasons for the discharge or adverse employment action. (CACI No. 2500; Judicial Council of California Civil Jury Instructions (2019 edition.))

There is an adverse employment action if an employer has taken an action that "taken as a whole, materially and adversely affected the terms, conditions, or privileges of" an employee's employment.  A "substantial motivating reason" is a reason that actually contributed to the discharge or adverse employment action.  (CACI No. 2507.)

In his first cause of action for disability discrimination, claimant alleges that Travelers terminated his employment due to his physical disability.  It is apparent that claimant bases this on the theory of constructive discharge.

---

[3] Every claim is claimant's complaint is alleged against Travelers and Ms. Stephens.  During the hearing of the motion, claimant's counsel stated that claimant is not pursuing any claims against Ms. Stephens except the claim for unlawful harassment.